[Cite as *Schaffer v. Ohio State Univ.*, 2024-Ohio-2185.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ALEX SCHAFFER | Case No. 2024-00226PQ |
| | 2024-00248PQ |
| Requester | 2024-00292PQ and |
| | 2024-00293PQ |
| v. | |
| | Special Master Todd Marti |
| THE OHIO STATE UNIVERSITY | |
| | <u>REPORT AND RECOMMENDATION</u> |
| Respondent | |

{¶1} These consolidated cases are before me to address procedural motions and for a R.C. 2743.75(F) report and recommendation.

{¶2} As to the procedural motions, I recommend that the court:
- Deny Respondent's Civ. R. 12(B)(6) motion for dismissal.
- Grant the portion of Requester's motion to strike and for sanctions that seeks to strike late filed evidence and deny the portion that seeks sanctions.
- Deny Respondent's motion to strike as moot.

{¶3} As to the merits in case Nos. 2024-00226PQ, 2024-00248PQ, and 2024-00292PQ, I recommend that the court:

- Find that Requester was not aggrieved by Respondent responding to his individual requests on a consolidated basis.
- Find that Respondent violated R.C. 149.43(B)(1) in those instances when it took more than five working days to produce the public records sought.
- Deny all other relief sought in these cases.

{¶4} As to the merits in Case No. 2024-00293PQ, I recommend that the court:

- Order Respondent to:
  - Produce all public records responsive to part 3 of Requester's January 17, 2024, public records request.
  - Produce all additional public records responsive to part 4 of that request or to certify that no additional responsive records exist.
  - Produce all public records responsive to part 6 of that request, as amended on February 12, 2024.

- Redact all those records to protect third parties' statutory privacy rights.
- Find that Respondent violated R.C. 149.43(B)(1) by unreasonably delaying production of the records sought.
- Deny all other relief sought in this case.

{¶5} Finally, I recommend that Requester recover his filing fees and costs in all these cases and that Respondent bear the balance of the costs of all these cases.

## I. Background.

{¶6} Requester Alex Schaffer operates a business that that uses information about Respondent Ohio State University's ("OSU") Athletic Department. He makes frequent public records requests to OSU for that information. *Requester, Alex Schaffer's Notice of Document Submission*, filed April 11, 2024, ("*Requester's Evidence*"), p. 4 ¶ 4; *Notice of Filing Documents*, filed April 11, 2024 ("*Respondent's Evidence*"), pp. 7-42, 487 ¶¶ 3, 6, 488 ¶ 7, 8.

{¶7} Mr. Schaffer was dissatisfied with OSU's response to some of those requests and filed four cases. Three involve the same issues: the consolidated nature and timeliness of OSU's responses to multiple requests for related information. Case Nos. 2024-00226PQ, 2024-00248PQ, and 2024-00292PQ. The fourth asserts that OSU has failed to respond at all to another group of requests. Case No. 2024-00293PQ. The details of the underlying requests and response are discussed below.

{¶8} The cases were consolidated and, pursuant to R.C. 2743.75(E)(3)(c), a schedule was set for the parties to file evidence and memoranda supporting their positions. That schedule has run its course, and the cases are ripe for decision. *Order*, entered March 28, 2024.

## II. Analysis.
### A. Procedural Motions common to the consolidated cases.

{¶9} The parties have made several procedural motions that impact all the consolidated cases.

{¶10} *Civ. R. 12(B)(6) motion*. Respondent arguably seeks Civ. R. 12(B)(6) dismissal of all these cases. Although not separately argued in the memorandum supporting OSU's April 19, 2024, *Combined Brief of Respondent the Ohio State University and Motion to Dismiss ("MTD")*, the motion itself invokes Civ. R. 12(B)(6) as a basis for

dismissing of all the consolidated cases.  That rule cannot be applied here because the *MTD* relies on matters going beyond the complaint itself. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs*., 65 Ohio St.3d 545, 548 (1992).

{¶11} *Requester's Motion to strike and for sanctions*. Requester moves to strike affidavits attached to the *MTD* because they were filed after the deadline to submit evidence, and for sanctions based on those late submissions. *Requester's Motion to Strike and For Sanctions*, filed April 29, 2024. That motion is well taken as to striking the affidavits, but I recommend against sanctions in these cases.

{¶12} Cases brought under R.C. 2743.75 are controlled by the same principles as mandamus actions. *Viola v. Ohio Attorney General's Office*, 2021-Ohio-3828, ¶ 16 (10th Dist.).  Courts administering mandamus proceedings generally disregard evidence submitted after pre-established deadlines. *State ex rel. Gil-Llamas v. Hardin*, 2021-Ohio-1508, ¶ 14 ("Because we set a deadline for the submission of evidence *** which relators failed to meet, relators' submission of its supplemental evidence was untimely. *** relators failed to seek leave of this court to file the supplemental evidence. Accordingly, we *** strike relators' supplemental evidence"); *State ex rel. Wtol TV, L.L.C. v. Fair*, L.P., 2023-Ohio-4593, ¶¶ 18, 19*; State ex rel. Pike Cty. Convention & Visitor's Bur. v. Pike Cty. Bd. of Commrs*, 2021-Ohio-4031, ¶ 7, fn. 3. This court has also rejected late filed evidence. *Doe v. Ohio State Univ*., 2024-Ohio-565, ¶¶ 10, 11 (Ct. of Cl.). There is no reason for deviating from those precedents here.

{¶13} This is not, however, an appropriate case for sanctions. Requester invokes R.C. 2323.51(A)(2)(a)(i) and (ii), but neither provision applies. There is no indication that Respondent's tardy submissions were for any purpose other supporting its substantive arguments, and that is not sanctionable under R.C. 2323.51(A)(2)(a)(i). Although those submissions are contrary to the precedent about filing evidence out of rule just discussed, *Doe v. Ohio State Univ*., *supra*, is arguably precedent for the proposition that such late submissions will not be sanctioned. That makes R.C. 2323.51(A)(2)(a)(ii) inapplicable.[1]

---

[1] That said, OSU, a regular litigant in this court, should note that the outcome regarding sanctions might well be different in future cases if it continues this now twice rejected practice.

{¶14} *Respondent's Motion to Strike*. Respondent seeks to exclude evidence regarding metadata and a public records request not addressed in the body of Requester's complaint. *Respondent's Motion to Strike Portions of Requester's Affidavit and Related Evidence*, filed April 29, 2024. The merits recommendations made below effectively give Respondent the relief sought in this motion, making the motion moot.

## B. Case Nos. 2024-00226PQ, 2024-00248PQ, and 2024-00292PQ.

{¶15} These cases arise from similar facts. Before each case was filed, Mr. Schaffer made a series of separate public records requests for data concerning ticket sales on specific dates. He made those requests on separate consecutive or nearly consecutive days and sought the same data about each date's sales. Those requests were made to OSU's Office of University Compliance and Integrity, the subpart of OSU that handles public record requests ("Compliance"). *Requester, Alex Schaffer's Notice of Document Submission*, filed April 11, 2024, ("*Requester's Evidence*"), pp. 5 ¶¶ 6-8, 12-21, 25-36, 41-56; *Respondent's Evidence*, pp. 43-44, 48-49, 56-57, 69-70, 82-83, 108-109, 112-113, 120-121, 132-133, 144-145, 156-157, 183-184, 188-189, 197-198, 211-212, 227-228, 239-240, 254-255, 266-267.[2]

{¶16} OSU followed the same pattern in responding to those requests. Compliance would promptly acknowledge the request and forward it to OSU's Athletic Department ("Athletics"). Athletics would let multiple requests accumulate and address them together, consolidating the responses into a single Excel spreadsheet. Athletics would forward the spreadsheet for each batch to Compliance. Compliance would review each spreadsheet and, once it was approved, forward it along with a covering email to Mr. Schaffer. None of the responses were redacted and every data point Mr. Schaffer requested was produced. This pattern was followed three times, covering all the requests underlying case Nos. 2024-00226PQ, 2024-00248PQ, and 2024-00292PQ. *Respondent's Evidence*, 43, 47, 50, 54, 56, 69, 71, 82, 84, 86, 108, 112, 115, 118, 119, 120, 122, 132, 134, 144, 146, 156, 158, 185, 187, 190, 193, 194-196, 197, 199, 227, 239, 241, 254, 266, 268, 488 ¶¶ 13,14.

---

[2] All references to specific pages of the complaints and *Requester's Evidence* are to the pages of the PDF copies posted on the Court's docket.

{¶17} Mr. Schaffer's complaints challenge those responses in two respects.

{¶18} He first asserts that it was improper for OSU to respond to his separate requests through consolidated responses. He argues that each request should have been addressed by a separate response.

{¶19} Mr. Schaffer also asserts that OSU violated R.C. 149.43(B)(1) by unreasonably delaying its response to his separate requests. He asserts that it was unreasonable for OSU to take more than one business day to produce the data sought in each request.

### 1. Respondent produced all the data requested in the pre-suit records requests.

{¶20} Although not raised in his complaints, Mr. Shaffer now argues that OSU failed to produce all the data he requested. More specifically, he asserts that OSU did not provide "Retail Resale" data and metadata regarding other data points. He asks that OSU be ordered to produce that data. *Requester Alex Schaffer's Combined Response in Opposition with Memorandum Contra and Reply Brief to Respondent's Combined Motion to Dismiss and Response*, filed April 29, 2024 ("*Opp Memo*"), pp. 7-9. That argument fails because he did not request that data in the requests underlying this case.

{¶21} On a general level, a "requester's right to judicial relief is fixed by the scope of the request pending when the case is filed *** A public record 'plaintiff may not expand the scope of his request' through litigation 'once his original request is made.'" *Ryan v. City of Ashtabula*, 2023-Ohio-621, ¶ 11, adopted 2023-Ohio-1487 (Ct. of Cl.) (quoting *Coss v. United States DOJ*, 98 F. Supp. 3d 28, 34 (D.D.C.2015)). Of particular interest here, a public office will not be compelled to produce metadata if the request did not expressly seek metadata. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶¶ 19-21. Mr. Schaffer is therefore only entitled to production of "Retail Resale" data and metadata if his pre-suit requests requested that data.

{¶22} They did not. Mr. Shaffer's requests were quite specific; his identically worded requests sought the following data points for each of the dates he inquired of:

> "Sales Report for Ohio State Mens basketball, 2023-2024 season home games that meet all of the following criteria:

A. Sales data from the Ohio State-Ticketmaster Ticket Exchange for the following calendar day: ***
B. Includes all games & tickets sold for that calendar day.
C. With these values: **event name, event_date, section_name, row_name, seat_num, tast_seat, num_seats, add_datetime, activity_narne, te_purchase_price, te_total_fees**" *Requester's Evidence*, pp. 12-21, 25-36, 41-56 (emphasis sic.).

**{¶23}** Those requests nowhere mentioned "Retail Resale" data or metadata. Mr. Schaffer's claim that OSU should be compelled to produce that data therefore fails.

## 2. Requester was not aggrieved by the consolidated responses to his separate requests.

**{¶24}** This case was filed pursuant to R.C. 2743.75. Both R.C. 149.43(C)(1) and R.C. 2743.75(D)(1) require that a person invoking R.C. 2743.75 be allegedly "aggrieved" by a violation of R.C. 149.43(B). "Aggrieved is commonly defined as having legal rights that are *adversely affected*; having been *harmed* by an infringement of legal rights," *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2023-Ohio-3382, ¶ 41 (Cleaned up, emphasis added). The party seeking review has the burden of proving that it was aggrieved. *HSBC Mtge. Servs. v. Watson*, 2017-Ohio-680, ¶ 11 (3d Dist.).

**{¶25}** Mr. Schaffer has not carried that burden; he has not demonstrated that his legal rights were "adversely affected" or "harmed" by the consolidated responses.

**{¶26}** The legal right involved was Mr. Schaffer's right to data allowing him to understand the governmental operations he was interested in. The consolidated responses contained every data point Mr. Schaffer requested. Mr. Shaffer received everything he asked for.

**{¶27}** There is no proof that gathering those data points into consolidated spreadsheets deprived Mr. Schaffer of the utility of that data. The evidence demonstrates that the data was collected in Excel spreadsheets organized in rows corresponding to the specific dates he inquired of.[3] Given that Excel's functionality enabled Mr. Schaffer to de-

---

[3] The fact that the responses were sent in Excel spreadsheets is established in two ways by timely filed evidence. First, the attachments listed in the responding email bear the ".xlsx" suffix. Second, clicking on the hyperlinks for the attachments in the emails filed with the court leads one to Excel spreadsheets. *Respondent's Evidence*, pp. 54, 118, 193.

consolidate the responses corresponding to a specific request by simply copying and pasting the row(s) corresponding to a given request into a separate spreadsheet, he had the full ability to do whatever he would do could have done with separate spreadsheets. The only "evidence" to the contrary is Mr. Schaffer's unexplained statement that the consolidated responses made him "unable to use the data as intended," but such conclusory statements have no evidentiary weight. *Requester's Evidence*, p. 7, ¶ 14; *H & H Properties v. Hodkinson*, 2010-Ohio-5439, ¶ 11(10th Dist.). I therefore recommend that the court reject this claim.

{¶28} I do not, however, recommend a holding that consolidated responses to separate requests can never violate R.C. 149.43. There could conceivably be cases where consolidation would degrade the value of the response, but this is not one of them.

### 3. Respondent unreasonably delayed its production of some of the records sought.

{¶29} R.C. 149.43(B)(1) requires a public office to "promptly" allow inspection of public records and requires an office to produce copies of records "within a reasonable period of time." An office meets those requirements if it takes those actions "without delay and with reasonable speed[.] *State ex rel. Wadd v. City of Cleveland*, 81 Ohio St.3d 50, 53, (1998). Whether it has done so "depends largely on the facts in each case." *Id*.

{¶30} Courts consider several factors relevant here in determining whether an office acted with sufficient alacrity. One is how long it has taken the office to respond to similar requests, both in the past and at the time of the case. *Id*. at 53; *State ex rel. Consumer News Servs. v. Worthington City Bd. of Edn*., 2002-Ohio-5311, ¶ 27. Another is the clarity of the request; less time is allowed if the request is clear; more leeway is given if it is not. *Id*. at ¶ 42; *State ex rel. Shaughnessy v. City of Cleveland*, 2016-Ohio-8447, ¶ 10. Yet another consideration is the accessibility of the responsive records; more time is reasonable if it is difficult to access those records. *State ex rel. Ware v. Bur. of Sentence Computation*, 2022-Ohio-3562, ¶ 19 (10th Dist.); *Easton Telecom Servs., L.L.C. v. Village of Woodmere*, 2019-Ohio-3282, ¶ 49 (8th Dist.). The volume of responsive records is another consideration; more time is allowed if the request involves a large volume of responsive records, less time is reasonable if less volume is involved. *State ex*

*rel. McCray v. Ohio DOC*, 2012-Ohio-2997, ¶ 3 (10th Dist.); *State ex rel. Miller v. Ohio Dept. of Edn*., 2016-Ohio-8534, ¶ 8 (10th Dist.); *State ex rel. Patituce & Assocs., LLC v. City of Cleveland*, 2017-Ohio-300, ¶¶ 5-10 (8th Dist.). The cases also consider the extent of redactions, more time is allowed if the responsive records require extensive redactions. Compare *State ex rel. Cincinnati Enquirer v. Pike Cty. Coroner's Office*, 2017-Ohio-8988, ¶ 59 and *Anderson v. Greater Cleveland Regional Transit Auth*., 2018-Ohio-3653, ¶ 7, adopted, 2018-Ohio-4596 (Ct. of Cl.), with *Miller*, 2016-Ohio-8534, ¶ 8; *State ex rel. Simonsen v. Ohio Dept. of Rehab. & Correction*, 2009-Ohio-442, ¶ 10 (10th Dist.); *State ex rel. Korecky v. City of Cleveland*, 2020-Ohio-273, ¶ 19 (8th Dist.); *Ware*, 2022-Ohio-3562, ¶ 19.

{¶31} The general standard announced in *Wadd* and the specific factors just discussed indicate that OSU's responses to some of Mr. Schaffer's requests were unreasonably protracted.

{¶32} OSU's response time varied between four and 12 working days from the date the requests were received. *MTD*, pp. 2-3. However, OSU's submissions recognize that several of these requests were fulfilled in four or five working days, likely because they were made closer to the times when Athletics addressed sets of accumulated requests. *MTD*, p. 2 (requests of February 26, 27, March 5), *Respondent's Evidence*, pp. 47, 84, 90, 102, 112, 115. Withholding responses beyond that time is "delay" within the meaning of *Wadd* and its general definition; they are the result of Athletics setting those requests aside and not addressing them as quickly as its processing of functionally identical requests showed it was capable of.

{¶33} Further, the additional time is not justified by the specific factors discussed above. Mr. Schaffer's requests were clear. OSU was apparently able to access the responsive data with relative ease. The volume of records responsive to each request was small. OSU made no redactions to the small body of data involved.

{¶34} Given those facts, I recommend that the court hold that any intervals of more than five working days between the requests and production were unreasonable. This recommendation is based on the 4.66 working day average of the response times for the February 26 and 27 and March 5 requests, rounded to the nearest whole number.

{¶35} That is not changed in Mr. Schaffer's favor by his assertion that OSU produced records responsive to other requests within one or two working days. He has not shown that those requests or the circumstances of those requests were comparable to the requests involved here.

{¶36} Nor is the result changed in OSU's favor by the fact that Mr. Schaffer makes many public records requests. The General Assembly sets Ohio's public records policy, and although it has placed limits on the frequency of requests to another state entity, it has not done so for OSU. *See* R.C. 149.43(F)(1).

{¶37} Finally, the result is not changed by OSU's assertion that the delays were justified by the large volume of record requests OSU must process. The Supreme Court has repeatedly rejected indistinguishable arguments. *Wadd*, 81 Ohio St.3d at 53-54 (collecting cases).

**B.     Case No. 2024-00293PQ.**

{¶38} This case arises from several distinct requests Mr. Schaffer made in January and February of 2024. Those requests and OSU's responses detailed below. *Complaint*, filed March 22, 2024.

**1.  Claims for production of records.**

This case involves four records requests. Each will be discussed separately.

**a.  Requester is entitled to some relief on the January 17, 2024, requests (OSU No. 24-632).**

On January 17, 2024, Mr. Schaffer requested:

"1. All versions of the 'Staff Complimentary Ticket Policy' attached hereto for reference

      a. Date Range: January 1, 2015-April 6, 2022

2. All records documenting communication concerning updates, modifications and version changes of the 'Staff Complimentary Ticket Policy' for all versions supplied in Request # 1 above

      a. Records should be searched for ALL employees included on the communications regarding the updates, modifications and changes.

3. All employment contracts of employees with a title of 'Assistant AD and above' that received greater than 2 football season tickets., Pg 1, Edibility-Bullet Point 4.

    a. Date Range of employment: Any point in time between January 1, 2015-January 16, 2024.

4. All payroll records documenting the 'Taxing Requirements' of ALL employees who exercised use of the "Complimentary Ticket Policy"

    a. Date Range of records: January 1, 2015-January 16, 2024

    b. For OSU Football Season Tickets and Parking Passes

    c. Records should document the employee and the amount of the taxing benefit as well as the description of the taxing benefit and date benefit remitted

5. A complete list of all employees who received complimentary tickets

    a. Date Range: January 1, 2015-January 16, 2024

    b. For OSU Football Season Tickets and Parking Passes

    c. Include full employee name, job title, work address, work phone, work email, Section, Row, Seat Numbers, Cost of Tickets, Cost of Donation (if applicable).

6. All records documenting communication for ALL employees requesting 'Complimentary Tickets'

    a. Date Range: January 1, 2015-January 16, 2024

    b. For OSU Football Season Tickets and/or Parking Passes

    c. Records should include all strings of communication that contain a request for tickets exercising this public employee benefit, including all communication concerning the fulfillment, rejection or otherwise discussing the request.

    d. This includes text messages[.]" *Requester's Evidence*, pp. 7-9 ¶ 20; 77-80." (Sic.)

{¶39} OSU denominated this request as 24-623. Prior to this case it responded that it had no records responsive to part 1, produced records pursuant to part 2, and objected that part 6 was overbroad. OSU stated that it would respond to parts 3, 4, and 5

at a later date. *Respondent's Evidence*, pp. 292, 331.  Mr. Schaffer replied by accepting the records produced for part 2 and amending part 6 to seek:

> "6. All records documenting communication for ALL employees requesting 'Complimentary Tickets'
>
> a. Date Range: January 1, 2022-December 31, 2023
>
> b. For OSU Football Season Tickets and/or Parking Passes
>
> c. Records should include all strings of communication that contain a request for tickets exercising this public employee benefit, including all communication concerning the fulfillment, rejection or otherwise discussing the request.
>
> d. This includes text messages
>
> e. This includes the request made via the requesting system as documented in the Complimentary Ticket Policy
>
> f. Individuals that obtained EITHER a Schottenstein Center Parking Pass AND/OR South Fieldhouse Parking Pass for the entire season for OSU Football, for the 2022 or 2023 season." *Respondent's Evidence*, p. 336.

{¶40} There was no significant interaction between Mr. Schaffer and OSU until April 11, 2024, three weeks after this case was filed. On that date OSU responded to parts 3, 4, 5 and 6 of these requests.  *Respondent's Evidence*, pp. 341-342, 347-440.

{¶41} *I recommend that OSU not be ordered to take further action on part 1 of these requests*. OSU asserted that no responsive records exist. *Respondent's Evidence*, p. 331. Mr. Schaffer argues that OSU actually has a prior responsive policy that was not produced, one previously posted on OSU's intranet. *Opp Memo*, p. 16.

{¶42} A requester who disputes an office's assertion that it does not have the record sought must prove that the office does have the record; either by clear and convincing evidence if the office supports its assertion with sworn evidence or with "some evidence" if the office does not provide such evidence. *Matis v Toledo Police Dept.*, 2023-Ohio-4878, ¶ 15, adopted, 2024-Ohio-567 (Ct. of Cl.). The only evidence Mr. Schaffer points to are emails stating that an earlier policy used to be posted on OSU's intranet, but that same evidence establishes that the policy is no longer there and that OSU's staff

could not find it. *Opp. Memo*, p. 16; *Requester's Evidence* pp. 104, 106. Mr. Schaffer has not met his burden of proof on this point.

{¶43} *I recommend that OSU not be ordered to take further action on part 2 of these requests*. OSU produced records responsive to this part on February 12, 2024. He asserts that he has not received all the communications sought in this part. He bases that on a portion of a policy that addressed communications between employee ticket holders and OSU. *Opp Memo*, p. 16, *Requester's Evidence*, p. 95, "Process."

{¶44} As just discussed, Mr. Schaffer has the burden of showing that additional responsive records exist. *Matis*, 2023-Ohio-4878, ¶ 15. He sought communications regarding "updates, modifications and version changes of the 'Staff Complimentary Ticket Policy.'" The evidence he cites does not address communications about "updates, modifications and version changes" to that policy, but instead deals with communications made pursuant to a then extant version of that policy. It does not support the existence of additional communications of the type described in his request. He has not carried his burden of proof on this point.

{¶45} *I recommend that OSU be ordered to produce all records responsive to part 3 of these requests*, *subject to redactions to protect third parties' statutory privacy rights*. This part sought all employment contracts meeting certain criteria that were generated between January 1, 2015, and January 16, 2024. OSU did not respond to this request before this case was filed, but objected to it as overbroad in its April 11, 2024, response, making the objection for the first time during this enforcement litigation. *Respondent's Evidence*, pp. 341-342.

{¶46} OSU waived that objection by not raising it before this case was filed. "A public office that does not timely deny a request as ambiguous or overly broad and provide the requester with the opportunity to cure that defect has waived the defense of overbreadth in subsequent enforcement litigation." *Hunt Eng., LLC v. Ohio EPA*, 2022-Ohio-3141, ¶ 11, adopted 2022-Ohio-3557 (Ct. of Cl.). There is a good reason for that rule: "permitting a public official to oppose a request as overbroad for the first time in litigation would enable the official to avoid the duty, when denying a request as overly broad, to 'provide the requester with an opportunity to revise the request[]'". *State ex rel.*

*Summers v. Fox*, 2020-Ohio-5585, ¶ 74 (quoting R.C. 149.43(B)(2)). OSU could have raised its overbreadth objection before this case was filed, and that might have resulted in a revision that avoided this part of this case. See *Respondent's Evidence*, pp. 331, 336 (request narrowed in response to overbreadth objection). It did not do so. It has therefore waived this objection, making this request enforceable.

{¶47} I therefore recommend that OSU be ordered to produce all records responsive to this part. I further recommend that OSU be required to make appropriate redactions to protect third parties' statutory privacy rights. See *Matis*, 2023-Ohio-4878, ¶ 10.

{¶48} *I recommend that OSU be ordered to produce all additional records responsive to part 4 of these requests*, *subject to redactions to protect third parties' statutory privacy rights, or to certify that no additional responsive records exist.* Part 4 sought all "payroll records documenting the 'Taxing Requirements' of ALL employees" who received complimentary season tickets or parking passes from 2015 through January 16, 2024. OSU responded by producing spreadsheets that identified employees who received those benefits, set forth information about the value of the benefits, and indicated the dates that OSU's human resources department was notified of those benefits. OSU did not however produce W-2s, pay stubs, or other payroll records. Mr. Schaffer argues that additional responsive records exist: the W-2s, paystubs and other payroll records. *Requester's Evidence*, pp. 7-8 ¶ 20, 77; *Respondent's Evidence*, pp. 341, 381-440; *Opp Memo*, p. 16.

{¶49} A requester asserting that a public office has not produced all responsive records has the burden of proving that additional responsive records exist. The requester must produce clear and convincing evidence if the office negates the existence of additional records with sworn evidence, but "some evidence" will satisfy the requester's burden if the office does not produce sworn evidence that it has produced all responsive records. If the requester produces sufficient evidence, the office must either produce the additional records or certify that they do not exist. *Matis*, 2023-Ohio-4878, ¶ 15.

{¶50} Although OSU provided affidavit testimony about its productions, that testimony is equivocal as to whether it produced the complete universe of responsive

records. It nowhere clearly states that, and parts of that testimony imply that there may be additional responsive records. *Respondent's Evidence*, p. 488, ¶ 11. Further, that testimony does not address the completeness of OSU's productions as to this specific part. Mr. Schaffer therefore need only provide "some evidence" that additional responsive records exist.

{¶51} "Some evidence *** exists if other records refer to or otherwise suggest the existence of the additional records." *Maleky v. Ohio State Univ., Office of Compliment & Integrity*, 2024-Ohio-568, ¶ 23, adopted in relevant part, 2024-Ohio-1266 (Ct. of Cl.). The spreadsheets OSU produced are some evidence that the additional records Mr. Schaffer requested exist. They identify specific employees who received the tickets/passes Mr. Schaffer inquired of and set forth the monetary value of those benefits. Free tickets and parking passes were part of those employees' compensation and Adm. Code 117-02-02(D)(4) required OSU to maintain the type of payroll records Mr. Schaffer requested regarding its employees' compensation. "Public officials are presumed to perform the duties of their offices," *State ex rel. Stine v. Atkinson*, 138 Ohio St. 217, 219, (1941), so those spreadsheets combine with that legal requirement to constitute some evidence that additional responsive records exist.

{¶52} I therefore recommend that OSU be ordered to produce all records responsive to this request or to certify that no additional responsive records exist. I further recommend that OSU be required to make appropriate redactions to protect third parties' statutory privacy rights. See *Matis*, 2023-Ohio-4878, ¶ 10.

{¶53} *I recommend that OSU not be ordered to take further action on part 5 of these requests*. This part sought a list of OSU employees who received complimentary tickets and parking passes.  It also asked that the records set forth the "Section, Row, Seat Numbers" of any tickets received.  OSU filed and served redacted copies of those records. Those records do not disclose the section, row and seat numbers because OSU asserts that it does not record that information. *Requester's Evidence*, pp. 7-8 ¶ 8, 77; *Respondent's Evidence*, pp. 341, 381-340.

{¶54} Mr. Schaffer's only objection to the sufficiency of OSU's response is that it does not contain information about the section, row, and seat numbers of the tickets,

information OSU asserts is not recorded. *Opp. Memo*. p. 16. As discussed above, Mr. Schaffer has the burden of proving that records containing that information exist. *Matis*, 2023-Ohio-4878, ¶ 15. He has produced no evidence of that fact. OSU has therefore satisfied its obligations as to this request.

{¶55} *I recommend that OSU be ordered to produce all records responsive to part 6 of these requests as amended February 12, subject to redactions to protect third parties' statutory privacy rights.* This part sought records related to communications between OSU and its employees about complimentary season tickets and parking passes. It originally sought records going back to 2015, but OSU objected on overbreadth grounds before this case was filed. Mr. Schaffer responded to that objection by narrowing this part of his request to records going back to 2022. OSU did not respond to the amended request prior to this case being filed. It objected to the amended request on overbreadth grounds after this case was filed. *Respondent's Evidence*, pp. 341-342.

{¶56} OSU has waived that objection. As discussed in connection with part 3 of these requests, a public office waives an overbreadth objection if it does not make the objection before an enforcement action is filed. *Hunt Eng*., 2022-Ohio-3141, ¶ 11; *Summers*, 2020-Ohio-5585, ¶ 74. That is what happened here. That is not changed by the fact that OSU made an overbreadth objection to the original version of this request. That original request was superseded by the amended request, *Ryan,* 2023-Ohio-621, ¶ 12; *Little Turtle Civic Assoc. v. City of Columbus*, 2021-Ohio-4439, ¶ 12, adopted 2021-Ohio-4655 (Ct. of Cl.), and no overbreadth objection was made to that significantly amended request before this case was filed.

{¶57} I therefore recommend that OSU be ordered to produce all records responsive to this request as amended on February 12. I further recommend that OSU be required to make appropriate redactions to protect third parties' statutory privacy rights. See *Matis*, 2023-Ohio-4878, ¶ 10.

b. **The court should not grant relief on requester's February 7, 2024, requests (OSU No. 24-740)**.

{¶58} These requests sought records related to OSU's swimming program and the hiring of an offensive coordinator for OSU's football team. OSU denominated it as request

No. 24-740. Although a copy of the request was attached to Mr. Schaffer's complaint, the body of the complaint did not identify it as one of the requests he sought to enforce. Mr. Schaffer nonetheless filed evidence about this request. *Complaint*, pp. 1-2; *Requester's Evidence*, pp. 8-9, ¶¶ 25-33, 81-82, 121-124.

{¶59} This claim is not properly before the court. Mr. Schaffer's failure to identify this request as being at issue violated R.C. 2743.75(D)(1), general requirements of notice pleading, and is not excused by his pro se status.

{¶60} *Mr. Schaffer failed to comply with R.C. 2743.75(D)(1).* R.C. 2743.75 requires a requester seeking relief though its process to "file a complaint, *on a form prescribed by the clerk of the court of claims*[.]" R.C. 2743.75(D)(1) (emphasis added). The form prescribed by the clerk requires the requester to "[g]ive the date of each request and be specific as to what records have not been provided." Ohio Court of Claims, *Ohio Court of Claims Public Records Access Formal Complaint*," https://ohiocourtofclaims.gov/wp-content/uploads/2021/08/public-records-complaint-form-2018.pdf (accessed May 7, 2024). Consistent with that, a party invoking R.C. 2743.75 must "*plead *** facts* showing that the requester sought *an identifiable public record* [.]" *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 33 (emphasis added).

{¶61} Although the body of Mr. Schaffer's complaint pled facts identifying other requests by date, it said nothing about this request. It similarly failed to specifically describe what records were withheld in response to this request. Mr. Schaffer therefore failed to comply with R.C. 2743.75(D)(1).

{¶62} *Mr. Schaffer's failure to plead facts indicating that this request was at issue deprived OSU of fair notice of this claim.* "Ohio is a notice pleading state. Pursuant to notice pleading," a party "is required to allege sufficient facts to give [the opposing party] notice of [his] claim." *Byrd v. Meyer*, 2022-Ohio-1827, ¶ 14 (10th Dist.) (Cleaned up). To "constitute fair notice, the complaint must *** allege sufficient underlying facts that relate to and support the alleged claim[.]" *Sultaana v. Horseshoe Casino*, 2015-Ohio-4083, ¶ 11 (8th Dist.) (Cleaned up).

{¶63} Although the body of Mr. Schaffer's complaint specifically identified other requests that he sought to enforce, it set forth no facts informing OSU that he sought

enforcement of this request. OSU could therefore reasonably assume that only the specifically identified requests were at issue. It appears that OSU only learned of Mr. Schaffer's intent to press claims based on this request at the time he filed his evidence. And because that was the same date that OSU was required to file its evidence, OSU was deprived of notice that it should marshal evidence addressing this request.

{¶64} *Mr. Schaffer's omission is not excused by the fact that he is proceeding pro se.* "It is well-settled that litigants who choose to proceed pro se are presumed to have knowledge of the law and legal procedures and are held to the same standard as litigants who are represented by counsel. A litigant proceeding pro se can neither expect nor demand special treatment." *Isreal v. Franklin Cty. Comm'rs*, 2021-Ohio-3824, ¶ 9 (10th Dist.) (Cleaned up). Accord, *Tingler v. Wyandot Cty. Prosecutor's Office*, 2022-Ohio-3559, ¶ 9 (Ct. of Cl.).

{¶65} I therefore recommend that the court deny relief based on this request.

### c. Requester has withdrawn his claims based on his other February 7, 2024, requests (OSU No. 24-749).

{¶66} This request sought records related to Andrew McCarthy. OSU numbered this request as 24-0749. *Complaint*, p. 2; *Respondent's Evidence*, pp. 441-442. Mr. Shaffer has withdrawn his claims based on this request. *Requester Alex Schaffer's Response in Opposition with Memorandum Contra to Respondent's Motion To Strike*, filed, April 29, 2024, pp. 6-7.

### d. The court should not grant relief on requester's February 9, 2024, requests (OSU No. 24-754).

{¶67} On February 9, 2024, Mr. Schaffer requested:

"1. All Offer Letters, Memorandums of Understanding, and any other documents evidencing offer and acceptance of employment between OSU and Charles Edward Kelly, "Chip Kelly"

3. All emails between Charles Edward Kelly and all staff members of the OSU Athletic Dept regarding his direct employment and status of potential employment as Offensive Coordinator for the OSU Football Team.

Time frame would be from January 25, 2024."

OSU denominated this request as 24-754. It made no substantive response before this case was filed, but produced records in response on April 11, 2024. Among the records produced was a copy of an email containing Mr. Kelly's personal email address. That address was redacted. *Requester's Evidence*, pp. 8, 81-82; *Respondent's Evidence*, p. 465.

{¶68} Although his reply is not completely clear on this point, it appears that Mr. Schaffer's only quarrel with OSU's response is to the redaction of Mr. Kelly's personal email address. *Opp Memo*, pp. 17-20. Any claim to that address fails as a matter of law.

{¶69} A requester is only entitled to compel production of public records existing at the time of the request. *Taxpayers Coalition v. City of Lakewood*, 86 Ohio St.3d 385, 392, (1999). This request was made on February 9, 2024. The email containing the redacted address was not in existence at that time; it was sent on February 14, 2024. Mr. Schaffer therefore had no right to that email based on his February 9 request, in either redacted or unredacted form. Consequently, OSU did not violate R.C. 149.43 by redacting that email.

## 2. Respondent unreasonably delayed its response to the requests underlying this case.

{¶70} R.C. 149.43(B)(1) requires a public office to provide requested records "within a reasonable period of time." The requests underlying this case were made on January 17 and February 9, 2024. OSU did not finally respond to parts of those requests until more than two months later and has yet to respond to other portions of those requests. Courts have found similar or shorter delays unreasonable. *Ware*, 2022-Ohio-3562, ¶ 17 (collecting cases). Mr. Schaffer has therefore made a prima facie case of unreasonable delay.

{¶71} OSU offers no explanation beyond the assertion that it must deal with many other records requests and other business. *MTD*, pp. 12-14. That response overlooks controlling precedent rejecting indistinguishable arguments. The Supreme Court has repeatedly held that:

> No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the

public's right to inspect and obtain a copy of public records within a reasonable time. *The respondent is under a statutory duty to organize his office and employ his staff in such a way that his office will be able to make these records available for inspection and to provide copies when requested within a reasonable time.* State ex rel. Beacon Journal Pub. Co. v. Andrews, 48 Ohio St.2d 283, 289, (1976) (Emphasis added).

Accord, *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 2008-Ohio-6253, ¶ 36; *Wadd*, 81 Ohio St.3d at 53. Given that, I recommend that the court find that OSU violated R.C.149.439(B)(1)'s mandate of timely production.

**D. Requester should recover his filing fees and costs; Respondent should bear the balance of the costs.**

{¶72} R.C. 2743.75(F)(3) provides that a requester should recover his filing fee and costs if "the court of claims determines that the public office *** denied the aggrieved person access to the public records in violation of division (B) of section 149.43 of the Revised Code[.]" OSU violated R.C. 149.43(B)(1) by its delay in responding to some of the requests in case Nos. 2024-00226PQ, 2024-00248PQ and 2024-00292PQ. It also violated R.C. 149.43(B)(1) by failing to produce the records responsive to parts 3, 4, and 6 of Mr. Schaffer's January 17, 2024, request and by its delay in producing records in response to the requests underlying case No. 2024-00293. Requester should therefore recover his filing fee and costs. OSU should bear the balance of the costs because its violations caused this case to be filed.

**III. Conclusion.**

{¶73} As to the procedural motions, I recommend that the court:

- Deny Respondent's Civ. R. 12(B)(6) motion for dismissal.
- Grant the portion of Requester's motion to strike and for sanctions that seeks to strike late filed evidence and deny the portion that seeks sanctions.
- Deny Respondent's motion to strike as moot.

{¶74} As to the merits in case Nos. 2024-00226PQ, 2024-00248PQ, and 2024-00292PQ, I recommend that the court:

- Find that Requester was not aggrieved by Respondent responding to his individual requests on a consolidated basis.
- Find that Respondent violated R.C. 149.43(B)(1) in those instances when it took more than five working days to produce the public records sought.

- Deny all other relief sought in these cases.

{¶75} As to the merits in Case No. 2024-00293PQ, I recommend that the court:

- Order Respondent to:
  - Produce all public records responsive to part 3 of Requester's January 17, 2024, public records request.
  - Produce all additional public records responsive to part 4 of that request or to certify that no additional responsive records exist.
  - Produce all public records responsive to part 6 of that request, as amended on February 12, 2024.
  - Redact all those records to protect third parties' statutory privacy rights.
- Find that Respondent violated R.C. 149.43(B)(1) by unreasonably delaying production of the records sought.
- Deny all other relief sought in this case.

{¶76} Finally, I recommend that Requester recover his filing fees and costs in all these cases and that Respondent bear the balance of the costs of all these cases.

{¶77} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

---
TODD MARTI
Special Master

**Filed May 8, 2024**
**Sent to S.C. Reporter 6/6/24**