[Cite as *Schaffer v. Ohio State Univ.*, 2025-Ohio-735.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| ALEX SCHAFFER | Case No. 2024-00876PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| THE OHIO STATE UNIVERSITY | |
| Respondent | |

{¶1} This matter is before me for a R.C. 2743.75(F) report and recommendation. I recommend that the court (1) enter judgment for respondent, (2) order requester to bear the costs of this case, (3) deny respondent's motion to dismiss, and (3) deny as moot requester's motions to strike.

**I. Background**.

{¶2} Requester Alex Schaffer has sworn that he is "the President and Founder of Empire Sports & Entertainment, Inc. . . . an Ohio Corporation that is involved in ticket resale[s][.]." Consistent with that, this court has previously found that "Alex Schaffer operates a business that . . . uses information about Respondent Ohio State University's ("OSU") Athletic Department. He makes frequent public records requests to OSU for that information." *PQ Miscellaneous*, *Notice of Filing Documents*, filed January 21, 2025, ("*Respondent's Evidence*"), p. 11 ¶ 4; *Schaffer v. Ohio State Univ*., 2024-Ohio-2185, ¶ 6, adopted 2024-Ohio-2625 (Ct. of Cl.).

{¶3} This case involves a two-part public records request Mr. Schaffer made to OSU. Both parts sought lists of the names and email addresses of persons who receive newsletters about OSU's athletic activities (collectively "the Lists"). OSU responded on December 12, 2024, by invoking a provision in its public records policy limiting a requester to 10 records a month unless he certifies that he is not requesting the records for

commercial purposes. It noted that Mr. Schaffer had already received 10 records in December and declined to provide additional records absent a certification that the Lists were not requested for commercial purposes. Mr. Schaffer responded that he had other purposes for his requests, but notably did not deny commercial purposes. OSU therefore kept the request open and unresolved at that time. It ultimately denied the request on the merits, as discussed below. *Respondent's Evidence*, pp. 5-10.

{¶4} Mr. Shaffer filed this case to challenge OSU's application of its policy limiting the number of records available to commercial requesters. He also seeks production of the materials he requested. Mediation was bypassed, OSU was ordered to file the Lists for in camera review, and both parties were ordered to submit evidence and memoranda supporting their positions. Those submissions have been made, making this case ripe for decision. *Order Bypassing Mediation*, entered December 20, 2024; *Entry,* entered January 14, 2025; *Order*, entered February 4, 2025.

## II. Analysis.

### A. The court should deny respondent's motion to dismiss and decide this case on the merits.

{¶5} OSU seeks dismissal pursuant to Civ. R. 12(B)(1) and (6). Neither basis is valid.

{¶6} OSU's Civ. 12(B)(1) defense is based on R.C. 2743.75(C)(2). That statute provides that:

> "If the allegedly aggrieved person files a complaint under this section and the court of claims determines that the complaint constitutes a case of first impression *that involves an issue of substantial public interest*, the court shall dismiss the complaint without prejudice and direct the allegedly aggrieved person to commence a mandamus action in the court of appeals with appropriate jurisdiction as provided in division (C)(1) of section 149.43 of the Revised Code." (Emphasis added)

{¶7} Dismissal is only appropriate under R.C. 2743.75(C)(2) if the case *both* presents an issue of first impression *and* the issue is of substantial public interest. *Tingler v. Ottawa Cty. Prosecutor's Office*, 2017-Ohio-8451, ¶¶ 9,10, adopted December 22, 2017 (Ct. of Cl.). Although this case does present a question of first impression (how to apply limitations on commercial requests), that question is not one of substantial public interest. Ohio law has authorized public offices to restrict the number of records provided in

response to commercially motivated records requests since 1999, but no cases have considered such limitations since then. S.B. 78, 148 Ohio Laws, Part IV, 8623, 8626-8627 (1999).  The absence of any litigation on the issue indicates a lack of substantial public interest. R.C. 2743.75(C)(2) therefore does not deprive the court of jurisdiction over this case.

{¶8} A Civ. R. 12(B)(6) motion cannot be granted if the movant relies on allegations or evidence beyond the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs*., 65 Ohio St.3d 545, 548 (1992). OSU relies on evidence beyond the complaint. That precludes a Civ. R. 12(B)(6) dismissal.

{¶9} I therefore recommend that respondent's motion to dismiss be DENIED.

## B. Respondent properly applied its policy on commercial requests.

{¶10} R.C. 149.43(B)(7)(c)(i) and (iii) explicitly authorize public offices to adopt policies limiting the number of records provided in response to commercially motivated requests. There are good reasons for authorizing public offices to treat commercial requests differently. Those requests can consume so much of an office's resources that they delay responses to other requests. A leading study on the impact of commercial requests upon the availability of records through the federal Freedom of Information Act ("FOIA") noted that:

> "The sheer volume of commercial requests likely contributes to the delay and inattention often experienced by constituencies at the heart of FOIA's intended use: the press and watchdog groups whose mission is to enhance external oversight of governmental activity and promote democratic governance.
>
> ***
>
> As previously documented, delay and administrative burden are some of the most commonly cited reasons why journalists do not make more use of FOIA . . . The sheer volume of commercial requests at some agencies is by definition taxing the system, and can only be making the barriers to the use of FOIA for democracy-enhancing activities all the higher." Kwoka, *FOIA, Inc*., 65 Duke L.J. 1361, 1415, 1424 (2016).

OSU relied on R.C. 149.43(B)(7) to adopt the following policy:

> "The university may limit the number of records delivered to a requester to 10 per month, unless the requester certifies to the university in writing that the requester does not intend to use or forward the requested records, or the information contained within them, for commercial purposes. If a

requester does not provide such certification, the university is only required to provide a maximum of 10 records per month to that requester." *Respondent's Evidence*, p. 57.

{¶11} OSU quite reasonably applied that policy here because it had good reason to suspect that the requests for the Lists were commercially motivated. Mr. Schaffer has sworn to this court that he is "the President and Founder of Empire Sports & Entertainment . . . an Ohio Corporation that is involved in ticket resale[.]" *Respondent's Evidence*, p.11 ¶ 4. This court has found that Mr. Schaffer makes public records requests to further his ticket reselling business. *Schaffer*, 2024-Ohio-2185, ¶ 6. The request and follow up emails were sent from "alex.schaffer@empiresports.com" and were all signed as "Alex Schaffer I President Empire Sports & Entertainment, Inc." *PQ Miscellaneous*, *Requester's Notice of Document Submission*, 43 page PDF file ("*Requester's Evidence*"), pp. 5, 6, 13, 16.[1]  The Lists would identify persons who would likely be interested in selling or buying tickets to OSU athletic events—subscribers to newsletters about OSU athletics. Mr. Schaffer does not dispute that OSU had already provided him with 10 records during the month of December. It was therefore reasonable to require Mr. Schaffer to certify that he would not use those lists for commercial purposes.

{¶12} Mr. Schaffer did not make that certification. Although he stated that he would use the Lists for other purposes, he did not certify that he would *not* use them for commercial purposes. *Id.*, p. 16. He therefore failed to comply with the plain language of OSU's policy and hence OSU was within its rights to apply the policy.

{¶13} That is not changed by the fact that Mr. Schaffer certified that he would use the Lists for purposes that are not commercial. It is possible that he would use the Lists for those purposes and also use them for commercial purposes; those purposes are not mutually exclusive.  Given Mr. Schaffer's explicit statement that he is in the ticket reselling business, and the Lists' obvious utility to that business, his non-denial of commercial purposes seems to be a thinly veiled evasion.  OSU was not required to accept it.

{¶14} Nor is it changed by Mr. Schaffer's assertion that he is legally prohibited from making public records requests on behalf of his business because he is not a lawyer.

---

[1] The references to specific pages of *Requester's Evidence* are to the pages of the PDF Copy filed with the court.

Although a non-lawyer cannot litigate on behalf of a business entity, nothing in R.C. 149.43 prohibits a layperson from making records requests that benefit a business entity.

## C. The court should deny requester's claim for production of records.

{¶15} OSU argues that Mr. Schaffer's request is unenforceable because the Lists are not records within the meaning of R.C. 149.011(G) and hence are not public records within the meaning of R.C. 149.43(A)(1). Mr. Schaffer counters that the Supreme Court's recent decision in *Hicks v. Union Township*, 2024-Ohio-5449, compels the conclusion that the Lists are indeed records. Mr. Schaffer's argument is not without force, but it fails in the face of intervening, and controlling, precedent.

{¶16} *Hicks* held that lists documenting who a public office communicates with are records and public records. 2024-Ohio-5449, ¶¶ 16, 17. That would arguably cover the Lists at issue here; they document who OSU, a public office, communicates with.

{¶17} However, *Hicks* is not the only relevant precedent here. *Doe v. Ohio State University*, 2024-Ohio-5891 (10th Dist.), dealt with lists very similar to those sought here, lists of the names and addresses of persons OSU communicated with about football tickets. The Tenth District reviewed the Supreme Court's precedents—including *Hicks*—on whether personal information compiled by public offices are records. It read those cases as holding that such information does not constitute a record unless it documents something beyond who the office communicated with:

> Under the foregoing precedent, whether personal information satisfies the third requirement of a record turns on whether that personal information sheds any light on the public office's performance of its activities. Thus, we must determine whether ticketholders' mailing addresses, email addresses, and telephone numbers shed light on Ohio State's ticketing activities. We conclude they do not. *Any particular ticketholder's mailing address, email address, or telephone number reveals little to nothing about Ohio State's activities with regard to ticketing*. The evidence shows that Ohio State uses ticketholders' email addresses and telephone numbers to administer the sale and distribution of tickets. *However, by themselves, the mailing addresses, email addresses, and telephone numbers provide no information about or insight into Ohio State's ticketing organization, functions, policies, decisions, procedures, operations, or activities. Because the ticketholders' personal information would not further the public understanding of the inner workings of Ohio State's ticketing process,*

*disclosure of that information would not assist in monitoring government conduct. Id.,* ¶ 31 (Emphasis added).

{¶18} Like the lists considered in *Doe*, the lists at issue here do not document anything about OSU's activities except who it communicates with and how it does so. There is no evidence that the lists themselves tell us anything about the broader activities of OSU's Athletic Department. *Doe* therefore mandates the conclusion that the lists at issue here are not records and hence not public records.

{¶19} I recognize that this result is hard to square with *Hicks*, but *Doe* is controlling precedent in this case. Because OSU's principal place of business is in Franklin County, R.C. 2743.75(G)(1) gives the Tenth District appellate jurisdiction over this case. "A decision of a court which has authority to review the decisions of another court is binding upon the latter court." *In re Schott*, 16 Ohio App.2d 72 (1st Dist.1968), paragraph 2 of the syllabus. *Doe* expressly considered *Hicks*, 2024-Ohio-5891, ¶ 30, so we are bound to follow *Doe's* reading of *Hicks*.

{¶20} I therefore recommend that the court deny Mr. Schaffer's claim for the production of the Lists.

**D. Requester should bear the costs of this case**.

{¶21} Costs should be assessed against requester pursuant to R.C. 2743.09(F) and R.C. 2303.20 because he implicitly agreed to pay those costs by filing this case. *Helfrich v. Hall*, 2022-Ohio-1852, ¶ 25 (5th Dist.).

**E. Requester's motions to strike should be denied as moot**.

{¶22} Requester's January 28 and February 11, 2025 motions to strike seek to strike portions of OSU's evidentiary submissions. None of the evidence those motions seek to exclude was considered in this report and recommendation. I therefore recommend that those motions be denied as MOOT.

**III. Conclusion**.

{¶23} In light of the foregoing, I recommend that:

A. Judgment be entered for respondent;

B. Respondent's motion to dismiss be denied;

C. Requester's motions to strike be denied as MOOT; and

D. Requester bear the costs of this case.

{¶24} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

 

TODD MARTI
Special Master

**Filed February 13, 2025**
**Sent to S.C. Reporter 3/6/25**