[Cite as *Matis v. Toledo Police Dept.*, 2023-Ohio-4878.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| JANINE MATIS | Case No. 2023-00600PQ |
| Requester | Special Master Todd Marti |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| TOLEDO POLICE DEPARTMENT | |
| Respondent | |

{¶1} This matter is before the special master for a R.C. 2743.75(F) report and recommendation. He recommends that (1) Respondent be ordered to produce unredacted copies of the records previously produced, except for redactions any squarely supported by R.C. 149.43(A)(2)(d), within 30 days of an entry of a R.C. 2743.75(F)(2) order in this case; (2) that Respondent be ordered to produce copies of the records listed in table 1 to this report and recommendation subject to any redactions squarely supported R.C. 149.43(A)(2)(d) or to certify that no such records exist within 30 days of an entry of a R.C. 2743.75(F)(2) order in this case; (3) that Requester recover her filing fee and costs in this action; (4) Respondent bear the balance of the costs in this case; and (5) that all other relief be denied.

## I. Background.

{¶2} Requester Janine Matis made a public records request to Respondent Toledo Police Department ("the Department"), seeking:

"all records pertaining to [ two crimes committed in 1997] - including, but not limited to - police reports, eyewitness statements, ballistics reports, photo arrays, supplemental reports, 911 & crime stopper calls, coroner reports, physical evidence collected, etc. *** [and] any audio and or video footage related to the crime, itself, and the interrogation of all witnesses & suspects." *Complaint*, filed September 11, 2023, pp. 3, 5.

{¶3} Ms. Matis' request was made on March 20, 2023. Although the Department acknowledged the request the same day, it largely ignored the request and Ms. Matis' repeated inquiries. That continued through the time she filed this case, almost six months later. *Id.* at pp. 6, 7, 8.

{¶4} Mediation was not ordered because the time involved would extend the already protracted resolution of Ms. Matis' request. See R.C. 2743.75(A) (R.C. 2743.75 proceedings are intended to provide "an expeditious *** procedure *** to resolve disputes alleging a denial of access to public records"). The Department was ordered to file the responsive records for in camera review and a schedule was set for the parties to submit evidence and memoranda supporting their positions. *Order*, entered September 9, 2023; *Order*, entered October 4, 2023.

{¶5} The Department served redacted copies of records responsive to Ms. Matis' requests, but did not file evidence or otherwise respond to her complaint. Ms. Matis was ordered to indicate which, if any, portions of her requests remain unsatisfied after that production. She has done so, and the case is ripe for decision. *Notice*, filed October 16, 2023; *Miscellaneous Filing*, made October 17, 2023; *Order*, entered October 31, 2023; *Reply to Respondent's Reply*, filed November 22, 2023 ("*Reply*").

**II. Analysis**.

{¶6} Ms. Matis contends that her requests remain unsatisfied in three respects. She contests the redactions to the records produced, asserts that the Department has failed to produce all records responsive to her requests, and seeks more legible copies of some of the records produced.

**A. Requester is entitled to unredacted copies of the records produced to her except for any redactions justified by R.C. 149.43(A)(2)(d). Respondent should be given a short period of time to identify any R.C. 149.43(A)(2)(d) redactions.**

{¶7} A review of the records produced to Ms. Matis confirmed that they were redacted. Those redactions were presumably made to obscure information the Department believes is exempted from public record status by the confidential law enforcement investigatory records ("CLEIR") provisions of R.C. 149.43(A)(1)(h) and (2).

{¶8} A public office asserting an exemption from its general duty to provide access to public records bears "the burden of production *** to plead and prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 27 (internal punctuation omitted). See also, *Id.* at ¶¶ 35, 54. That burden is activated when the office first asserts the exemption, *id.* ¶ 54, and must be carried with "competent, admissible evidence[.]" *Id.* at ¶¶ 53, 77. That burden applies when an office invokes the CLIER exemption. *State ex rel. Myers v. Meyers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, ¶ 30.

{¶9} The Department has produced no argument or evidence supporting its redactions, despite being repeatedly advised of its burden and specifically ordered to set forth the bases for those redactions. *Order*, entered September 19, 2023 at ¶ (B)(2); *Order*, entered October 4, at ¶ (B)(2); *Order*, entered November 28, 2023 at ¶ 2. The Department has therefore failed to carry its burden.

{¶10} Although a public office's failure to prove the basis for an exemption normally results in an order to produce the requested records forthwith, that is not always the case. The office may instead be ordered to further investigate whether grounds for the exemption actually exist and to revise its initial response based on what it discovers if immediate production would unduly compromise third parties' statutory privacy rights. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 26; *Tobias v. Ohio Secy. of State's Office*, Ct. of Cl. No. 2023-00628PQ, 2023-Ohio-4440, ¶ 14, adopted 2023-Ohio-4439.

{¶11} This may be such a case. Ordering the immediate production of the records at issue could deprive some people of privacy they are entitled to under R.C. 149.43(A)(1)(h) and (2). Although the special master's review of the records has found no information covered by R.C. 149.43(A)(2)(a) through (c), it is possible that some persons may be entitled to the protection of the life and safety provisions of R.C. 149.43(A)(2)(d). Those persons should not be put at risk by of the Department's default.

{¶12} The special master therefore recommends that the Department be ordered to identify whether release of any *specific portions* of the responsive records in

unredacted form would pose the danger described by R.C. 149.43(A)(2)(d), to identify those *specific portions*, to remove all other redactions, and to reproduce the records with only those redactions supported by R.C. 149.43(A)(2)(d). The Department should also be ordered to consider the fact that 21 years have passed since the records were generated and the matters described in those records occurred as it analyzes the existence of dangers covered by R.C. 149.43(A)(2)(d) and that only information fitting "squarely within" that statute may be redacted.   *Welsh-Huggins*, 163 Ohio St.3d 337, ¶¶ 27, 63.  See also *id.* at ¶¶ 50, 63.

{¶13} The special master further recommends that the Department be ordered to take those actions *promptly*. The requests at issue here have been pending for an unreasonably long time—almost nine months. That is the antithesis of the "prompt[]," and "expeditious" resolution of public records requests contemplated by R.C. 149.43(B)(1) and R.C. 2743.75(A). See *State ex rel. Ware v. Bur. of Sentence Computation*, 10th Dist. Franklin No. 21AP-419, 2022-Ohio-3562, ¶ 17 (surveying cases). The special master therefore recommends that the Department be ordered to take the actions described in the immediately preceding paragraph within 30 days of the date of the court's entry of an R.C. 2743.75(F)(2) order in this case.

{¶14} The special master recognizes that might impose some burden on the Department, but no "pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of public records within a reasonable time." *State ex rel. Warren Newspapers v. Hutson*, 70 Ohio St.3d 619, 623, 640 N.E.2d 174 (1994). "The respondent is under a statutory duty to organize [its] office and employ [its] staff in such a way that [the] office will be able to make these records available for inspection[.]" *Id.*

**B. Respondent is obligated to produce some additional records or to certify that those records do not exist. Any records produced should be redacted pursuant to R.C. 149.43(A)(2)(d).**

{¶15} If a requester makes a sufficient showing that a public office has failed to produce all responsive public records the office must either produce the remaining

responsive records or certify that none exist. *State ex rel. Sultaana v. Mansfield Corr. Inst.*, __ Ohio St.3d __, 2023-Ohio-1177, __ N.E.2d. __, ¶¶ 37-43, 50; *State ex rel. Harris v. Pureval*, 155 Ohio St.3d 343, 2018-Ohio-4718, 121 N.E.3d 337, ¶¶ 15, 18. The sufficiency of a showing to trigger that obligation varies depending on the nature of the office's response. The requester must produce clear and convincing evidence if the office provides affidavit testimony that no additional records exist. The requester need only provide some evidence if the office does not provide affidavit testimony negating the existence of additional responsive records. *Sultaana*, 2023-Ohio-1177, ¶¶ 40-43.

{¶16} Ms. Matis asserts that the Department has failed to produce several types of records responsive to her requests. The Department has proffered no affidavit denying the existence of additional responsive records. Ms. Matis is therefore entitled to the production of those records or a certification they do not exist if she has produced some evidence that additional records exist. She has done so regarding some types of records, but not for others.

### 1. Tapes and transcripts of witness interviews.

{¶17} Ms. Matis requested "any audio and or video footage related to the crime, itself, and the interrogation of all witnesses & suspects." *Complaint*, pp. 3,5. The Department did not produce any such recordings. Ms. Matis points out that certain of the records produced seem to reference such tapes. The Department's in camera submission confirms those references. *Reply*, p. 5; *Appendices to Reply*, filed November 22, 2023 ("*Apx.*"), pp. 42-43; *Notice of Filing*, filed December 7, 2023 ("*In Camera Records*"), pp.101-102.[1] Those references constitute some evidence that the tapes exist. The special master therefore recommends that the Department be required to either produce those tapes or certify that they do not exist. Ms. Matis' request for unredacted transcripts of these interviews is dealt with by section II(A) of this report and recommendation. Any such tapes should be redacted to obscure any information falling squarely within R.C. 149.43(A)(2)(d).

---

[1] All references to specific pages of the *Complaint* are to the pages of the PDF copy posted on the Court's public docket. All references to specific pages within the *Apx.* are to the PDF pages of 70-page PDF file posted on the Court's public docket. All references to specific pages of the *In Camera Records* are to the pages marked in the Department's internal pagination of that filing.

{¶18} This request also seeks copies of any other taped interviews and transcripts of those interviews. There is no evidence of other taped interviews, except for the interviews of Mr. Ochoa, discussed below. This prong of this request therefore fails for want of proof, except as to the Ochoa interviews.

### 2. Taped statement of Barbara Vance.

{¶19} As just discussed, Ms. Matis requested tapes of any witness interviews. She asserts that Barbara Vance was a witness the Department interviewed and provided evidence suggesting that Ms. Vance was interviewed twice. The *In Camera Records* confirm that Ms. Vance was interviewed twice. *Complaint*, pp. 3, 5; *Reply*, p. 6; *Apx.* pp. 27, 28, 40, 42; *In Camera Records*, pp. 87-88, 101.

{¶20} There is no evidence that those interviews were recorded. Ms. Vance was not listed as a witness and those interviews are not included in the Department's list of taped interviews. *In Camera Records*, pp. 101-102. The reports describing the Department's interactions with Ms. Vance do not reference any recording. *Id.*, pp. 87-88. Further, the circumstances of those interactions are not consistent with the Department recording them. The interviews that were recorded took place in the Department's offices and one of the Vance interviews occurred in her home. *Id.*, p. 87. The other interview did occur in the Department's offices, but it consisted of Ms. Vance watching security video footage and it would seem hard to record her watching another recording. Finally. Ms. Matis provided no other evidence that Ms. Vance's evidence was taped. The special master therefore recommends that the Department not be required to take further action regarding the Vance interviews.

### 3. Taped statements of Angela Cruz.

{¶21} Ms. Matis asserts that the Department taped its interview with Angela Cruz, and seeks a tape of her interview. Ms. Matis points to portions of records the Department produced suggesting that Ms. Cruz was interviewed. That interview was confirmed by the *In Camera Records*. *Reply*, p. 7; *Apx.* pp. 32-33; *In Camera Records*, pp. 98-99.

{¶22} Although Ms. Matis has produced some evidence that Ms. Cruz was interviewed, there is no evidence that the interview was taped. The records describing Ms. Cruz's interview do not mention it being taped, no such tape was included in the list

of taped interviews, and Ms. Matis produced no other evidence establishing the interview was taped. *Id.* 98-99, 101-102. The special master therefore recommends that the Department not be required to take further action regarding the Cruz interview.

### 4. Tapes and transcripts of the Orlando Ochoa statements.

{¶23} Ms. Matis claims that Orlando Ochoa was interviewed twice, and that the Department should have produced copies of recordings and transcripts of those interviews. She has proffered evidence suggesting that Mr. Ochoa was interviewed twice, and that fact is confirmed by the *In Camera Records. Reply*, p. 8; *Apx.* pp. 37-38, *In Camera Records*, pp. 95-96.

{¶24} There is some evidence that the Ochoa interviews may have been recorded or transcribed. The Department's records list him as a witness and state that he "gave statement," the same description it made of other witnesses it listed as being taped. Compare *id.* at p. 101, "Witnesses," items 19, 20, 21 with *id.* at p. 101-102, "Evidence," items 3,4,5. Further, the police report describing Mr. Ochao's proffers describe them as "statement[s]," suggesting that they were memorialized in some way. *Id.* at 96. The special master therefore recommends that the Department be required to either produce recordings and transcripts of the Ochoa interviews or certify that they do not exist. Any tapes/transcripts produced should be redacted to obscure any information that would fall squarely within R.C. 149.43(A)(2)(d).

### 5. Taped interview of James Thomas.

{¶25} Ms. Matis asserts that James Thomas was interviewed, and that the Department should have produced a tape of the interview. She has proffered evidence suggesting that Mr. Thomas was interviewed. That fact is confirmed by the *In Camera Records. Reply*, p. 9; *Apx.* p. 48; *In Camera Records*, p. 107.

{¶26} There is no evidence that the Thomas interview was taped. Mr. Thomas was not listed as a witness, this interview is not included in the Department's list of taped interviews, the report that references the Thomas interview does not mention taping, and Ms. Matis proffers no other evidence that the Thomas interview was taped. *Id.* pp. 101-102, 107. The special master therefore recommends that the Department not be required to take further action regarding the Thomas interview.

**6. Taped interviews of John Sylvester**.

**{¶27}** Ms. Matis claims that John Sylvester was interviewed twice, and that the Department should have produced tapes of those interviews. She has produced evidence suggesting that Mr. Sylvester was interviewed twice. That fact is confirmed by the *In Camera Records*. *Reply*, p. 10; *Apx.* pp. 28-29; *In Camera Records*, pp. 88-89.

**{¶28}** There is no evidence that the Sylvester interviews were recorded. Mr. Sylvester was not listed as a witness, this interview is not included in the Department's list of taped interviews, the report that references the Sylvester interviews does not mention taping, and Ms. Matis proffers no other evidence that the Sylvester interview was taped. *Id.* pp. 88-89, 101-102.[2]　The special master therefore recommends that the Department not be required to take further action regarding the Sylvester interviews.

**7. Taped interview of cab driver**.

**{¶29}** Ms. Matis contends that the Department interviewed a cab driver who witnessed events relevant to one of the crimes referenced in Ms. Matis' request, and that the Department should have produced a tape of the interview. She has proffered evidence suggesting that the interview occurred. That is confirmed by the *In Camera Records*. *Reply*, p. 11; *Apx.* p. 49; *In Camera Records*, p. 108.

**{¶30}** There is no evidence that the cab driver's interview was taped. The cab driver was not listed as a witness, this interview is not included in the Department's list of taped interviews, the report that references this interview does not mention taping, and Ms. Matis proffers no other evidence that the interview was taped. *Id.* pp. 101-102, 108. The special master therefore recommends that the Department not be required to take further action regarding this interview.

**8. Gun shot residue test results**.

**{¶31}** Ms. Matis correctly asserts that the Department collected clothing related to one of the crimes covered by her request and ordered tests to determine whether the clothing bore gunshot residue. *Reply*, p. 12; *Apx.* p. 31; *In Camera Records*, p. 117.

---

[2] Although one of those records references "the transcript of that interview," that reference is to the interview of a person other than Mr. Sylvester. That other interview was one of the ones that was transcribed. *In Camera Records*, pp. 55-64, 89, 102.

{¶32} The documentation that the Department requested the test is some evidence that there were written results for these tests. The special master therefore recommends that the Department be required to either produce records of the test results or certify that they do not exist.

### 9. Fingerprint test results.

{¶33} Ms. Matis accurately points out that the Department recovered the gun that was used in one of the crimes covered by her request and ordered that it be tested for fingerprints. *Reply,* p. 13; *Apx.* pp. 28-29, 51, *In Camera Records*, pp. 88-89, 111, 125. The fact that the test was ordered is some evidence that there is a record of the results. The special master therefore recommends that the Department be required to either produce records of the test results or certify that they do not exist.

### 10. Property disposition reports.

{¶34} Ms. Matis correctly asserts that the Department collected clothing, a gun, and a shell casing related to one of the crimes covered by her request and contends that the Department's retention schedule indicates that there should be a record of the disposition of that property. *Reply*, p. 14; *Apx.* p. 14; *In Camera Records*, p. 102. She has not, however, produced the retention schedule that she asserts requires preservation of the record she seeks, and has provided no other evidence that the record she seeks exists. The special master therefore recommends that the Department not be required to take further action regarding this matter.

### 11. Security video.

{¶35} Ms. Matis correctly points out that the Department obtained a copy of a tape from a security camera at the scene of one of the crimes covered by her request. She asserts that the tape was not produced. *Reply*, p. 14; *Apx.* pp. 5, 28, 44; *In Camera Records*, pp. 82, 88, 103.

{¶36} The fact that the Department obtained that tape is some evidence that it exists. The special master therefore recommends that the Department be required to either produce a copy of the tape results or certify that it does not exist.

### C. Requester has not shown that more legible copies exist.

{¶37} Many of the records the Department produced regarding the second crime covered by Ms. Matis' request are illegible. *Apx.* pp. 56-70. They seem to be copies of poor-quality microfiche records. Ms. Matis contends that the Department should produce more legible copies. *Reply*, p. 15.

{¶38} This claim presumes that the Department has, but has not produced, more legible copies of these records. Her claim is essentially that the Department has not produced responsive records it its custody. That requires evidence that other, more legible, records exist. Ms. Matis has presented no evidence of that fact. This claim therefore fails for want of proof.

### D. Requester is entitled to recover his filing fee and costs.

{¶39} R.C. 2743.75(F)(3)(b) provides that the "aggrieved person shall be entitled to recover from the public office or person responsible for the public records the amount of the filing fee of twenty-five dollars and any other costs associated with the action[.]" Requester was aggrieved by the Department's unsupported redactions and its failure to produce or negate the existence of some responsive records. She is therefore entitled to recover her filing fee and costs

## III.    Conclusion.

{¶40} In light of the foregoing, the special master recommends that:
- Respondent be ordered to produce unredacted copies of the records previously produced except for redactions any squarely supported by R.C. 149.43(A)(2)(d) within 30 days of an entry of a R.C. 2743.75(F)(2) order in this case.
- Respondent be ordered to produce copies of the records listed in table 1 to this report and recommendation subject to redactions squarely supported by R.C.149.43(A)(2)(d) or to certify that no such records exist within 30 days of an entry of a R.C. 2743.75(F)(2) order in this case.
- Requester recover her filing fee and costs in this action.
- Respondent bear the balance of the costs in this case.
- That all other relief be denied.

{¶41} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this*

*report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

TODD MARTI
Special Master

# Table 1

**Alleged Records to be produced or certified not to exist**

| Alleged Record | *In Camera Record* pp. references to alleged record |
|---|---|
| Tapes of witness interviews disclosed by the Department | 101-102 |
| | |
| Tapes and transcripts of the Orlando Ochoa statements | 95-96 |
| | |
| Gun residue test results | 117 |
| | |
| Fingerprint test results | 111, 125 |
| | |
| Security video | 82, 88, 103 |

**Filed December 18, 2023**
**Sent to S.C. Reporter 1/4/24**