[Cite as *Schaffer v. Ohio State Univ.*, 2025-Ohio-476.]

**IN THE COURT OF CLAIMS OF OHIO**

| | |
|---|---|
| ALEX SCHAFFER | Case No. 2024-00815PQ |
| Requester | Judge Lisa L. Sadler |
| v. | <u>DECISION AND ENTRY</u> |
| THE OHIO STATE UNIVERSITY | |
| Respondent | |

{¶1} In this public-records case, Respondent The Ohio State University ("Respondent or OSU") objects to a Special Master's Report and Recommendation. The Court sustains, in part, and denies, in part, Respondent's objections and the Court does not adopt the Report and Recommendation for reasons explained below.

## I. Background and Procedural History

{¶2} On November 21, 2024, Requester, a self-represented litigant, filed a Complaint against Respondent, alleging a denial of access to public records in violation of R.C. 149.43(B). Requester asserts that Respondent denied his requests for the following:

> All ticket sales data doe all home games and all tickets sold from the Ohio State Ticketmaster Ticket Exchange for the 2013, 2014, 2015, 2016, 2017, 2018, 2019, 2021, 2022, and 2023 Football Seasons. The reports are to include the following columns/metadata parameters which the database is programmed to return:
>
> event_name
> event_date
> section_name
> row_name
> last_seat
> seat_num
> num_seats
> add_datetime
> activity_name

te_purchase_price
te_total _fees

Please note: THE REQUESTED OUTPUT FILE IS TO CONTAIN BOTH RETAIL RESALE AND TE RESALE TRANSACTIONS FOR ALL OF THE COLUMNS ABOVE, THIS INCLUDES RETAIL RESALE DATA FOR TE_PURCHASE_PRICE AND _TE_TOTAL_FEES

Also, the reports are to be SEPARATED by year, meaning ONE REPORT for each year for a total of 10 individual reports.

{¶3} The Court appointed a Special Master who did not refer this case for mediation.  As explained by the Special Master, "Mediation was bypassed because the parties' fraught relationship made settlement unlikely, so a schedule was set for them to file evidence and memoranda supporting their positions."  (Report and Recommendation, 2.)

{¶4} On January 2, 2025, Respondent filed a Combined Brief and Motion To Dismiss, and, on January 2, 2025, Requester filed a response to Respondent's Motion To Dismiss.  Eight days later, on January 10, 2025, the Special Master issued a Report and Recommendation (R&R).   In the Background Section of the Report and Recommendation, the Special Master described the circumstances underlying Requester's request as follows:

Ticketmaster Indiana ("Ticketmaster") has contracted with Ohio State University ("OSU") to act as OSU's agent for the distribution of tickets to OSU's football and basketball games. *PQ Miscellaneous*, "Evidence Packet" filed December 13, 2024, ("*Requester's Evidence*"), pp. 13-62 ("the Contract"). That agency involves, among other things, the resale of tickets by ticketholders. Ticketmaster provides electronic fora for buyers and sellers to connect, facilitates/executes the transactions between them, charges them fees for that service, and pays OSU a royalty on those transactions. The amount of that royalty is based on the "gross transaction value of all" resale transactions. That arrangement covers both the resale of season tickets, known as "TE Resales," and the resale of other tickets, known as "Retail Resales." *Requester's Evidence,* pp. 13, § (2)(a); 20, §4(i)

and (j); 36, § 18 "Buckeyes Exchange" and "Buckeyes Exchange Net Fees;" 49; 65.

Ticketmaster is obligated to provide OSU with information about those transactions to support its calculations of the amounts of the royalties due OSU. OSU also has the right to audit Ticketmaster's records to verify Ticketmaster's calculations. *Requester's Evidence*, pp. 20, §4(i) and (j); 25, § (8)(a); 26, § (8)(f); 49; 50; 65.

(Footnote omitted.) (R&R, 1-2.)  The Special Master further stated:

Requester Alex Shaffer made a public records request to OSU for certain data about TE Resales and Retail Resales of tickets to OSU's football games during the 2013-2019 and 2021-2023 seasons. … OSU timely provided all the data about TE Resales and most of the data about Retail Resales*. PQ Miscellaneous*, filed December 16, 2024; *PQ Miscellaneous*, filed December 20, 2024 ("*Respondent's Evidence*"), p. 4, ¶¶ 3, 4, 5, 6.

OSU did not provide two data points about Retail Resale transactions: the price of the tickets resold, and the fees Ticketmaster charged for those transactions. OSU presented two bases for not providing that data. One was that it does not have the data. That is supported by internal OSU correspondence stating that Ticketmaster has not given the data to OSU. The other is that the data is not a record within the meaning of R.C. 149.011(G). *Id.*, pp. 3, 4, ¶ 6; *Requester's Evidence*, p. 65.

(R&R, 2.)

{¶5} The Special Master determines in the Report and Recommendation that the Court should require Respondent to obtain and produce the data generated on and after July 1, 2018, because the data is a record, the data is captured in electronic records, the data comes under Respondent's jurisdiction, and the data would document Respondent's functions, operations, and other activities.  The Special Master further concludes that the "quasi-agency doctrine" requires Respondent to obtain and produce the data generated on or after July 1, 2018.  The Special Master "recommend[s] that the court:

(A) Order respondent to produce the purchase price and fee data on all Retail

Resale transactions generated on or after July 1, 2018;

(B) Order respondent to file and serve a certification that it has produced that data no later than 30 days after the entry of a judgment adopting this report and recommendation;

(C) Award requester his filing fee and costs;

(D) Require respondent to pay the balance of the costs of this case; and

(E) Deny all other relief.

(R&R, 9.)

**{¶6}** On January 22, 2025, Respondent filed written objections to the Report and Recommendation with an accompanying Certificate of Service. According to the Certificate of Service, Respondent's counsel certifies that he "electronically filed a copy of the [objections] with the Clerk of Court using Odyssey eFileOH system, which will send notification of such filing to all counsel of record," that "[p]arties may access this filing through the Court's system," and that a copy of the written objections "was served via electronic and certified mail."[1]

**{¶7}** The next day—January 23, 2025—Requester filed a notice in which Requester advised the Court that Requester would not file objections to the Report and Recommendation. That same day, January 23, 2025, Requester filed a written response to Respondent's objections. According to a Certificate of Service accompanying Requester's written response, Requester certified that he submitted his response to the Clerk of the Ohio Court of Claims for filing via the Odyssey eFileOH system, and he served an electronic mail copy of the same in addition to "remitting a copy via USPS Certified Mail Return Receipt Requested."

---

[1] The Court previously has interpreted its local rules to mean that the service of documents through the Court's efiling system is ineffective. *See Lerussi v. Calcutta Volunteer Fire Dept.*, 2024-Ohio-1695, fn. 1, ¶ 1 (Ct. of Cl.).

Under R.C. 2743.75(F)(2), either party "may object to the report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested" and "[i]f either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested."

{¶8} Pursuant to R.C. 2743.75(F)(2), the matter is before the Court for a determination. *See* R.C. 2743.75(F)(2) ("[t]he court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation").

## II.     Law and Analysis

### A. Legal Standard, Respondent's Objections, and Requester's Response.

{¶9} The General Assembly has created an alternative means to resolve public-records disputes through the enactment of R.C. 2743.75. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 11. *See* R.C. 2743.75(A). Under Ohio law a requester "must establish entitlement to relief in an action filed in the Court of Claims under R.C. 2743.75 by clear and convincing evidence." *Viola v. Cuyahoga Cty. Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist.), citing *Hurt v. Liberty Twp.*, 2017-Ohio-7820, ¶ 27-30 (5th Dist.). *See Welsh-Huggins* at ¶ 32. It is a requester's burden to prove, by clear and convincing evidence, that the requested records exist and are public records maintained by a respondent. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8.

{¶10} A public-records custodian has the burden to establish the applicability of an exception to disclosure of a public record. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. In *Jones-Kelley*, the Ohio Supreme Court held:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. (*State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30, followed.)

*Kelley* at paragraph two of the syllabus.

{¶11} Respondent maintains in its objections that the Special Master's recommendation that Respondent be ordered to acquire retail resale price and fee data from Ticketmaster and to produce such retail resale price and fee data to Requester is

not based on the ordinary application of statutory law or case law, that it is predicated on factual conclusions that have not been established by clear and convincing evidence, and that it prejudices the rights of Ticketmaster, a nonparty. Specifically, Respondent maintains:

A. The Report is predicated on factual conclusions which have not been established by clear and convincing evidence, because the language of the Contract does not clearly and convincingly establish a contractual right of access by OSU to the Requested Data.

B. The Report is not based on the ordinary application of statutory law or caselaw because it erroneously concludes that the Requested Data are within OSU's "statutory responsibilities."

C. The Report is not based on the ordinary application of statutory law or case law because it erroneously concludes that the quasi-agency doctrine applies to the Requested Data.

D. The Report prejudices the rights of third parties not involved in this litigation by, in effect, ordering Ticketmaster to turn over the Requested Data.

{¶12} In response, Requester contends that Respondent's objections "are baseless, procedurally improper, and devoid of legal merit" and that they "frivolously attempt to introduce new arguments not asserted in its Motion to Dismiss and they misconstrue both the factual record and established law under R.C. 149.43, while relying on no evidence to support their arguments to essentially overturn the Quazi-Agency Test by the Ohio Supreme Court."[2]

{¶13} For ease of discussion, the Court shall consider Respondent's objections together.

## B. Discussion

---

[2] Respondent's objections challenge certain findings and conclusions in the Special Master's Report and Recommendation. Because Respondent filed its Motion To Dismiss before the Report and Recommendation was issued, it follows that Respondent's arguments in its objections may be different than arguments asserted by Respondent in Respondent's Motion To Dismiss.
.

{¶14} Requester's public-records request asked Respondent for certain ticket sales data and for ten reports containing the requested data in a specific format as programmed by a database. (See Complaint.).

{¶15} Data, in common usage, is defined as "factual information (such as measurements or statistics) used as a basis for reasoning, discussion, or calculation," and "information in digital form that can be transmitted or processed." https://www.merriam-webster.com/dictionary/data. (accessed Jan. 24, 2025). Because Requester's public-records request asked for data, Requester's public-records request essentially asked for information—not records. And Requester's public-records request seemingly assumed that Respondent had a program that could produce ten individual reports containing the requested data while using certain parameters.

{¶16} A request for information, as well as a request for a custodian of records to create a new record by searching for selected information, however, constitute improper requests under R.C. 149.43. *See State ex rel. Morgan v. City of New Lexington*, 2006-Ohio-6365, ¶ 30 ("[r]equests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43"). In *State ex rel. Morabito*, 2012-Ohio-6012, the Eighth District Court of Appeals explained:

> Under the public records statute, the government has the duty to supply records, not information, and the government has no duty to create records to meet a requester's demand. *State ex rel. Lanham v. Ohio Adult Parole Auth.*, 80 Ohio St.3d 425, 1997-Ohio-104, 687 N.E.2d 283; *State ex rel. Mayrides v. Whitehall*, 62 Ohio St.3d 203, 580 N.E.2d 1089 (1991); *State ex rel. Warren v. Warner*, 84 Ohio St.3d 432, 1999-Ohio-475, 704 N.E.2d 1228; and *State ex rel. Fant v. Tober*, 8th Dist. No. 63737, 1993 Ohio App. LEXIS 2591. Nor is there a duty to provide records that no longer exist. [*State ex rel. Chatfield v. Gammill*, 2012-Ohio-1862].

*State ex rel. Morabito* at ¶ 14.

{¶17} Data may be captured in public records, including electronic records. *See, e.g., State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2012-Ohio-753, ¶ 41 ("written instruments electronically recorded by the recorder's office

are records under R.C. 149.011(G) and 149.43, the Public Records Act"). The term "records," as used in R.C. Chapter 149, "includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in [R.C. 1306.01], created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). *See* R.C. 149.43(A)(1) (defining "public record," as used in R.C. 149.43).

{¶18} To establish that the data sought by Requester are records for purposes of R.C. 149.011(G) and 149.43, Requester is required to prove that the data sought constitute (1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of Respondent, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of Respondent. *See State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19. If Requester fails to prove any of these requirements, Requester is not entitled to compel access to the requested data because those items are not subject to disclosure under the Public Records Act. *See State ex rel. Dispatch Printing Co.*, at ¶ 19.

{¶19} Here, included within the submitted evidence is an affidavit of Scott Hainer, Director of the Public Records Office and Compliance Reporting at The Ohio State University, who avers that, on November 20, 2024, he provided all responsive records in Respondent's possession, that he informed Requester that the retail resale data that Requester had requested was not in Respondent's possession, that Respondent does not maintain the "Retail Resale" data, and that Respondent has no records containing such data. (Hainer Affidavit dated December 12, 2024, paragraph 5, 6.) Hainer further averred, "To the extent it exists, it is in the possession of Ticketmaster, not OSU." (Hainer Affidavit, paragraph 6.)

{¶20} In *Sell v. Trumbull Cty. Juv. Div.*, 2024-Ohio-6139, ¶ 6 (Ct. of Cl.), this Court recently stated:

> Where a public office asserts that all records have been provided, a requester must provide sufficient evidence that the records exist in order to succeed on a public records claim. *State ex rel. Sultaana v. Mansfield Corr.*

*Inst.*, 2023-Ohio-1177. If the public office provides affidavit testimony that no records exist, the requester must provide clear and convincing evidence that the records do exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246. However, "some evidence" is sufficient if the office does not provide affidavit testimony negating the existence of additional responsive records. *Sultaana* at ¶ 37-43. Some evidence exists if the requester establishes facts that would usually result in the existence of the additional records or if other records refer to or otherwise suggest the existence of the additional records. *Id.; Mattis v. Toledo Police Dept.*, 2023-Ohio-4878 (Ct. of Cl.).

{¶21} After a careful and independent review of the submitted evidence, the Court finds that Requester has not sustained his burden to provide clear and convincing evidence that *records*, as defined in R.C. 149.011(G), containing the additional data that Requester seeks were created or received by Respondent. (See Requester's Evidence filed on Dec. 20, 2024.) *See Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus ("[c]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established"); *State ex rel. Cincinnati Enquirer v. Deters*, 2016-Ohio-8195, ¶ 19, quoting *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16 ("[a]lthough the Public Records Act is accorded liberal construction in favor of access to public records, 'the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence'").

{¶22} Data, as discussed above, constitutes *information*—not records or public records. *See* R.C. 149.011(G) (defining records); R.C. 149.43(A)(1) (defining public records). Because, at the outset, Requester's public-records request sought non-records (i.e., data or information), Requester's public-records request constituted an improper request under R.C. 149.43. *See State ex rel. Morgan v. City of New Lexington*, 2006-Ohio-6365, ¶ 30. Since, at the outset, Requester made an improper public-records request, whether Ticketmaster Indiana has the remaining data (i.e., non-records) sought

by Requester becomes, at a minimum, a premature issue for examination or possibly an issue that requires no examination because Requester is seeking data (i.e., non-records).

{¶23} While the parties' exchange of data (i.e., non-records) may have been permissible under the Ohio Public Records Act, *see Ohio Sunshine Laws 2024: An Open Government Resource Manual*, p. 17 ("[t]he Public Records Act does not *restrict* a public office from releasing non-records, but other laws may prohibit a public office from releasing certain information in non-records" (footnote omitted) (emphasis sic)), Respondent's objections raise this fundamental issue: whether Respondent should be compelled to produce non-records (i.e., data) when Respondent was presented with an ineffective public-records request (i.e., request for non-records) at the outset, and in the face of evidence establishing that Respondent has no responsive records containing the additional data sought by Requester without clear and convincing evidence establishing that responsive records do exist.  Hainer's affidavit testimony establishes that, despite Respondent's production of some data (i.e., non-records) to Requester, Respondent does not maintain the "Retail Resale" data sought by Requester and Respondent has no records containing such data.  Because Respondent has no records containing the additional data sought by Requester, Respondent has no duty to create a record or a report containing the additional data sought by Requester.  *See State ex rel. Morabito v. City of Cleveland*, 2012-Ohio-6012, ¶ 14 (8th Dist.).

{¶24} Since, through Requester's public-records request, Requester sought non-records (i.e., data or information), which is not a proper public-records request, it follows that Requester has failed to establish an entitlement to relief by clear and convincing evidence.  The Court therefore finds merit in Respondent's arguments that the Special Master's Report and Recommendation is not based on the ordinary application of statutory law or case law.  *See* R.C. 2743.75(F)(1) (requiring a special master to submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint.)

{¶25} Because the Court has found merit in Respondent's objections asserting that the Special Master's Report and Recommendation is not based on the ordinary application of statutory law or case law, Respondent's remaining objections concerning the Special Master's application of the quasi-agency doctrine and resulting prejudice to

Ticketmaster's third-party rights, if the Report and Recommendation were to be adopted, are rendered moot. *See City of Grove City v. Clark*, 2002-Ohio-4549, ¶ 11 (10th Dist.) (actions or opinions are moot when they have become fictitious, colorable, hypothetical, academic or dead). A determination of these remaining objections therefore is not required. *See City of Monroe v. Korleski*, 2011-Ohio-1671, ¶ 9 (10th Dist.) ("[a]s a general matter, courts will not resolve issues that are moot. …This is not a local or state of Ohio rule of procedure, but rather a firmly-rooted legal doctrine"); *see also State ex rel. Karmasu v. Tate*, 83 Ohio App.3d 199, 205 (4th Dist.1992), citing *Coulverson v. Ohio Adult Parole Auth.*, 1992 WL 97805 (4th Dist. May 11, 1992) (a trial court "is not required to consider any legal theory, or argument, beyond that which will adequately dispose of the case at hand"); *PDK Laboratories Inc. v. United States Drug Enforcement Administration*, 360 U.S.App.D.C. 344, 357, 362 F.3d 786 (2004) (Roberts, J., concurring in part and in the judgment) ("'the cardinal principle of judicial restraint -- if it is not necessary to decide more, it is necessary not to decide more -- counsels us to go no further'").

## III.    Conclusion

**{¶26}** After carefully considering the parties' arguments and relevant law, and after carefully considering the facts and circumstances presented here, the Court SUSTAINS, IN PART, and DENIES, IN PART, Respondent's Ohio State University's Objections To The Report And Recommendation filed on January 22, 2025. The Court finds that Respondent's objections concerning the Special Master's application of the quasi-agency doctrine and resulting prejudice to Ticketmaster's third-party rights are moot. Pursuant to R.C. 2743.75(F)(2), the Court REJECTS the Special Master's Report and Recommendation issued January 10, 2025, for reasons explained above. Court costs are assessed against Requester. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____

_____

LISA L. SADLER
Judge

**Filed January 31, 2025**
**Sent to S.C. Reporter 2/13/25**