[Cite as *Newman v. Greater Columbus Arts Council*, 2025-Ohio-734.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| MICHAEL NEWMAN | Case No. 2024-00619PQ |
| Requester | Judge Lisa L. Sadler |
| v. | <u>DECISION AND ENTRY</u> |
| GREATER COLUMBUS ARTS COUNCIL, et al. | |
| Respondents | |

{¶1} In this public-records case, Requester, a self-represented litigant, partially objects to a Special Master's Report and Recommendation. The Court overrules Requester's objections and adopts the Report and Recommendation for reasons explained below.

### I.     Background and Procedural History

{¶2} On August 8, 2024, Requester filed a Complaint under R.C. 2743.75(D) in which Requester alleged: "The Greater Columbus Arts Council [GCAC] and the Columbus Film Commission [CFC] have improperly denied me of access to their public records in violation of sections 149.43 and 149.431 of the Ohio Revised Code." Requester appended information to the Complaint to support his allegations, including the following description of his public-records request:

> On 7-11-24 I emailed a Public Records Request to John Daugherty, the Executive Director of CFC. I emailed Mr. Daugherty a slightly revised request on 7-15-24 (Exhibit A). My revised request was for the following documents pertaining to CFC/Film Columbus:

1. **All complete Film Columbus financial reports/expense & revenue reports/budget reports from the years 2015-2024 with line item breakdowns showing how this public funding was spent.**

2. **All Film Columbus annual reports from the years 2015-2024.**

3. **All travel expense reports with receipts from Film Columbus executive director John Daugherty for the years 2015-2024 with complete line item breakdowns.**

4. **All Film Columbus expense reports with line item breakdowns for consulting fees, marketing & research studies or reports, and filmmaker production visits for the years 2015-2024.**

5. **All invoices from 2015-2024 pertaining to all companies, consultants, and independent contractors paid by Film Columbus.**

6. **All financial reports/expense reports/budget reports and invoices pertaining to the Ohio Film Studio Feasibility Study conducted by SHM Partners in 2023.**

7. **An actual copy of the 2023 feasibility report conducted by SHM Partners.**

8. **All expense reports for all pitch competitions and all film summits conducted by Film Columbus from 2015-2024.**

9. **All expense reports for all workshops conducted by Film Columbus from 2015- 2024.**

10. **All Film Columbus expense reports pertaining to all advocacy efforts for the Ohio Motion Picture Tax Credits from 2015-2024.**

11. **All Employment Reviews/Assessments/Valuations of John Daugherty from the years 2015-2024 conducted by GCAC, the Film Columbus Board of Trustees and/or the GCAC Board of Trustees.**

12. **All bylaws & codes of rules and regulations for the Boards of Trustees for both Film Columbus and GCAC.**

13. **All contracts between Film Columbus, GCAC, and the City of Columbus from 2015-2024.**

(Emphasis sic.)

{¶3} Requester asserts that Mr. Daugherty did not respond to his public-records request, but, according to Requester, on July 15, 2024, he received a response from CFC's attorney, Mr. Edward Segelken, which was addressed to Johann Geistmeister, in which Mr. Segelken, in part, advised:

> Ohio law does **not** require either the CFC nor the GCAC to maintain any "public records" and there is simply no legal support for requiring either the CFC or the GCAC to respond to a PRR [public-records request] under Ohio law.
>
> Your PRR is denied because the CFC and GCAC are not public offices and furthermore and note [sic] of the requested information falls within the definition of "public records" under Ohio law. To obtain budgets, annual reports or other records from the City of Columbus' regarding Its functions, policies, decisions, procedures, operation or other activities of the City, we direct your attention to the City's website for information on how to request public records: ….

(Emphasis sic.)  (Background, Attachment A.)

{¶4} The Court appointed a Special Master who referred the case for mediation. After mediation failed to successfully resolve all disputed issues between the parties, the case was returned to the docket of the Special Master.

{¶5} On January 23, 2025, the Special Master issued a Report and Recommendation (R&R).  The Special Master determined that Requester's claim for production of records should be granted, in part.  After the Special Master applied the factors of the functional-equivalency test contained within *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854 to determine whether Respondent (a private entity) should be deemed a public institution under R.C. 149.011(A), and thus a public office for purposes of the Public Records Act, the Special Master determined that the evidence was in equipoise.  (R&R, 4.)  The Special Master explained that Requester "has shown two factors, but failed to show two other factors. That falls short of the clear and convincing evidence required to prove functional equivalence."  (R&R, 4.)  However, the Special Master further determined that R.C. 149.431 entitles Requester to many of the records

he seeks, but Requester has not shown that all the records otherwise available through R.C. 149.431 exist. (R&R, 5-8.) The Special Master "recommend[s] that the court:

> A. Grant requesters claim for the production of the records generated from January 1, 2020 through July 15, 2024 that are responsive to parts 1, 6, and 13 of his records request.
>
> B. Award requester his filing fees and costs.
>
> C. Require respondent to bear the balance of the costs of this case.
>
> D. Deny all other relief."

(R&R, 8.)

{¶6} On January 29, 2025, Requester filed written objections in which Requester partially objects to the Report and Recommendation. Requester has certified that he served a copy of his objections on Respondent's counsel "via email and certified mail."[1] On February 4, 2025, Respondent filed a Response to Requester's objections. Respondent's counsel has certified that she served a copy of Respondent's Response on Requester "via email and certified mail."

{¶7} Pursuant to R.C. 2743.75(F)(2), Requester's objections are before the Court for determination and the case is before the Court for a final judgment. *See* R.C. 2743.75(F)(2) ("[t]he court, within seven business days after the response to the objection is filed, shall issue a final order that adopts, modifies, or rejects the report and recommendation").

## II. Law and Analysis

### A. Legal Standard, Respondent's Objections, and Requester's Response.

{¶8} Through the enactment of R.C. 2743.75 the General Assembly created an alternative means to resolve public-records disputes. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 11. *See* R.C. 2743.75(A). Under Ohio law a requester "must establish entitlement to relief in an action filed in the Court of Claims under R.C. 2743.75 by clear and convincing evidence." *Viola v. Cuyahoga Cty.*

---

[1]      Under R.C. 2743.75(F)(2) either party "may object to [a] report and recommendation within seven business days after receiving the report and recommendation by filing a written objection with the clerk and sending a copy to the other party by certified mail, return receipt requested" and "[i]f either party timely objects, the other party may file with the clerk a response within seven business days after receiving the objection and send a copy of the response to the objecting party by certified mail, return receipt requested."

*Prosecutor's Office*, 2021-Ohio-4210, ¶ 16 (8th Dist.), citing *Hurt v. Liberty Twp.*, 2017-Ohio-7820, ¶ 27-30 (5th Dist.). *See Welsh-Huggins* at ¶ 32. It is a requester's burden to prove, by clear and convincing evidence, that the requested records exist and are public records maintained by a respondent. *See State ex rel. Cordell v. Paden*, 2019-Ohio-1216, ¶ 8. *See Cross v. Ledford*, 161 Ohio St. 469 (1954) (paragraph three of the syllabus) ("[c]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established"); *State ex rel. Cincinnati Enquirer v. Deters*, 2016-Ohio-8195, ¶ 19, quoting *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246, ¶ 16 ("[a]lthough the Public Records Act is accorded liberal construction in favor of access to public records, 'the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence'").

{¶9} A public-records custodian has the burden to establish the applicability of an exception to disclosure of a public record. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. In *Jones-Kelley*, the Ohio Supreme Court held:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. (*State ex rel. Carr v. Akron,* 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30, followed.)

*Kelley* at paragraph two of the syllabus.

{¶10} Here, Requester "partially object[s] to the Special Master's Report and Recommendation. Specifically, [Requester] object[s] to the following Special Master's findings:

1. Requester has not made a clear and convincing case that GCAC is the

functional equivalent of a public office because GCAC only meets two of the four main factors.

2. Records requested in Request #2 are not financial records.

3. Records requested in Requests #7, #11, and #12 are not public records.

4. Requestor has not shown that all the records otherwise available through R.C. 149.431 exist."

Requester seeks the following relief:

"1. Uphold my objections to the Special Master's Report and Recommendation.

2. Order GCAC to produce all of the records I requested.

3. Conclude that GCAC is the functional equivalent of a public office."

In response, Respondent urges: "Put simply, the Special Master got this one right." Respondent contends that, in the Report and Recommendation, the Special Master correctly found that GCAC is not the functional equivalent of a public office and that, pursuant to R.C. 149.431, Requester is entitled to financial records. Respondent asks the Court to adopt the Report and Recommendation.

**B. Requester has not shown that the Columbus Greater Arts Council (a private entity) is the functional equivalent of a public office by clear and convincing evidence.**

{¶11} A private entity may be subject to the Ohio Public Records Act if the entity is shown to be the functional equivalent of a public office by clear and convincing evidence. *See State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854, paragraph one of the syllabus ("[p]rivate entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office"); *see Cross v. Ledford*, *supra*, at paragraph three of the syllabus (definition of "clear and convincing evidence").

{¶12} In *Oriana House,* the Supreme Court of Ohio established the following functional-equivalency test to determine whether a private entity is a public institution under R.C.149.011(A):

In determining whether a private entity is a public institution under R.C. 149.011(A) and thus a public office for purposes of the Public Records Act, R.C. 149.43, a court shall apply the functional-equivalency test. Under this test, the court must analyze all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act.

*State ex rel. Oriana House, Inc.* at paragraph two of the syllabus. Application of the functional-equivalency test "requires a case-by-case analysis, examining all pertinent factors with no single factor being dispositive." *State ex rel. Oriana House, Inc.* at ¶ 23.

{¶13} Despite Requester's objections, upon independent review, the Court finds that, in this instance, the Special Master's correctly applied *Oriana House*'s functional-equivalency test, when, after balancing the *Oriana House* factors, he concluded that the evidence is in equipoise whether GCAC is the functional equivalent of a public office, and, consequently, Requester failed to provide clear and convincing evidence to rebut a presumption that GCAC—a private entity—is not subject to the Ohio Public Records Act. *See Oriana House* at ¶ 26 ("hold[ing] that the functional-equivalency analysis begins with the presumption that private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office"). The Court agrees with the Special Master's view that Requester "has shown two factors, but failed to show two other factors. That falls short of the clear and convincing evidence required to prove functional equivalence." (R&R, 4.)

**C. The Special Master's recommendation about Request # 2 is not error.**

{¶14} Requester objects to the Special Master's determinations that records requested in Request #2 are not financial records for purposes of R.C. 149.431 and that such records are not required to be provided.

{¶15} In Request # 2, Requester asked for the following: "All Film Columbus annual reports from the years 2015-2024." Requester states in his objections: "The Special Master erroneously concluded that Request #2 does not include financial records. It is clear that Request #2 is a request for financial documents. Film Columbus' Annual

Reports are by definition financial records. I included the 2018 Annual Report (Exhibit A) in my original complaint to show with clear and convincing evidence these annual reports are financial by nature." (Objections, 8-9.)

**{¶16}** In the Report and Recommendation, the Special Master determined that Request # 2 was not a request for a financial record under R.C. 149.431. The Special Master reasons: "The materials sought in parts 2, 7, 11, and 12 are not 'financial' records because they do not relate to money, the way money is managed, or monetary receipts and expenditures. Those materials need not be produced." (R&R, 7.)

**{¶17}** R.C. 149.431 applies to certain contracts of nonprofit corporations or associations with governmental entities and financial records of any moneys expended in relation to services provided under such contracts. R.C. 149.431 states:

> (A) Except as provided in [R.C. 9.833, 2744.081, and 3345.203], any governmental entity or agency and any nonprofit corporation or association, except a corporation organized pursuant to [R.C. Chapter 1719] prior to January 1, 1980 or organized pursuant to [R.C. Chapter 3941], that enters into a contract or other agreement with the federal government, a unit of state government, or a political subdivision or taxing unit of this state for the provision of services shall keep accurate and complete financial records of any moneys expended in relation to the performance of the services pursuant to such contract or agreement according to generally accepted accounting principles. Such contract or agreement and such financial records shall be deemed to be public records as defined in [R.C. 149.43(A)(1)] and are subject to the requirements of [R.C. 149.43], except that:

> (1) Any information directly or indirectly identifying a present or former individual patient or client or such an individual patient's or client's diagnosis, prognosis, or medical treatment, treatment for a mental or emotional disorder, treatment for a developmental disability, treatment for drug abuse or alcoholism, or counseling for personal or social problems is not a public record;

(2) If disclosure of the contract or agreement or financial records is requested at a time when confidential professional services are being provided to a patient or client whose confidentiality might be violated if disclosure were made at that time, disclosure may be deferred if reasonable times are established when the contract or agreement or financial records will be disclosed.

(3) Any nonprofit corporation or association that receives both public and private funds in fulfillment of any such contract or other agreement is not required to keep as public records the financial records of any private funds expended in relation to the performance of services pursuant to the contract or agreement.

(B) Any nonprofit corporation or association that receives more than fifty per cent of its gross receipts excluding moneys received pursuant to Title XVIII of the "Social Security Act," 49 Stat. 620 (1935), 42 U.S.C. 301, as amended, in a calendar year in fulfillment of a contract or other agreement for services with a governmental entity shall maintain information setting forth the compensation of any individual serving the nonprofit corporation or association in an executive or administrative capacity. Such information shall be deemed to be public records as defined in [R.C. 149.43 (A)(1)] and is subject to the requirements of division (B) of that section.

Nothing in this section shall be construed to otherwise limit the provisions of section 149.43 of the Revised Code.

The term "financial" or "financial records" is not defined in R.C. 149.431.  In common usage, the term "financial" means "pertaining to monetary receipts and expenditures; pertaining or relating to money matters; pecuniary." https://www.dictionary.com/browse/financial (accessed Feb. 14, 2025).  *See* R.C. 1.42 ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly").  Here, the Special Master states: "The materials sought in parts 2, 7, 11,

and 12 are not 'financial' records because they do not relate to money, the way money is managed, or monetary receipts and expenditures." (R&R, 7.)   Such reasoning is consistent with the meaning of "financial," as defined above.

{¶18} The Court, however, is cognizant that, in common usage, the term "financial" may be broadly defined as "relating to finance or financiers," which, in turn, may pertain to a document, such as an annual report.

{¶19} Notably, under R.C. 149.431(A)(3) any nonprofit corporation or association that receives both public and private funds in fulfillment of a contract or other agreement with a political subdivision "is not required to keep as public records the financial records of any private funds expended in relation to the performance of services pursuant to the contract or agreement."   In the excerpts from CFC's 2018 Annual Report (which Requester states that he obtained from a public-records request to the City of Columbus' Finance Division in 2022 and which Requester appended to his Complaint), "in kind" and "contributions" (in addition to "fiscal sponsors") are listed as sources of revenue. Additionally, "contract personnel," "insurance," "telephone," and "office expenses" are listed as "expenses." It thus appears that CFC's annual reports may include a listing of private funds that are received and from which a portion such private funds is expended to pay for expenses.

{¶20} Upon independent review, the Court finds Requester's objection to the Special Master's recommended disposition of Request # 2 is not persuasive.

**D.  The Special Master's recommendations about Requests No. 7, No. 11, and No. 12 are not error.**

{¶21} In Requests #7, #11, and # 12, Requester seeks the following:

7. An actual copy of the 2023 feasibility report conducted by SHM Partners.

11. All Employment Reviews/Assessments/Valuations of John Daugherty from the years 2015-2024 conducted by GCAC, the Film Columbus Board of Trustees and/or the GCAC Board of Trustees.

12. All bylaws & codes of rules and regulations for the Boards of Trustees for both Film Columbus and GCAC.

Requester states in his objections: "If this Court agrees with my argument that GCAC is the functional equivalent of a public office, then the records pertaining to requests #7,

#11, and #12 should be provided to me because they would be, by definition, public records." (Objections, 9.)

{¶22} As discussed above, the Court disagrees with Requester's contention that he has proven by clear and convincing evidence that GCAC is the functional equivalent of a public office. The Court finds that Requester's objections pertaining to the Special Master's recommended disposition of Request Nos. 7, 11, and 12 are not persuasive.

**E. Requester has not shown by clear and convincing evidence that records pertaining to Request Nos. 3, 4, 9, and 10 exist.**

{¶23} Requester maintains that, despite the Special Master's findings to the contrary, he has satisfied his burden to prove by clear and convincing evidence that records pertaining to Request Nos. 3, 4, 9, and 10 exist. In Request Nos. 3, 4, 9, and 10, Requester sought the following records:

3. All travel expense reports with receipts from Film Columbus executive director John Daugherty for the years 2015-2024 with complete line item breakdowns.

4. All Film Columbus expense reports with line item breakdowns for consulting fees, marketing & research studies or reports, and filmmaker production visits for the years 2015-2024.

9. All expense reports for all workshops conducted by Film Columbus from 2015- 2024.

10. All Film Columbus expense reports pertaining to all advocacy efforts for the Ohio Motion Picture Tax Credits from 2015-2024.

Within the submitted evidence is an affidavit of Thomas J. Katzenmeyer, President & CEO, Greater Columbus Arts Commission (GCAC). (Katzenmeyer Affidavit, filed Dec. 26, 2024). In the affidavit, Mr. Katzenmeyer avers:

….

2. Columbus Film Commission ceased operations in 2020. That year, the Film Commission became part of GCAC, at which point the Film Commission formally dissolved.

3. Due to the dissolution of the Film Commission and merger of the two organizations, GCAC does not have in its possession any document prior to 2020.

4. GCAC does not maintain travel expense reports with receipts for John Daugherty.

5. GCAC does not maintain expense reports with line item breakdowns for consulting fees, marketing & Research studies or reports, and filmmaker production visits.

6. GCAC does not maintain expense reports for all workshops conducted by Film Columbus.

7. GCAC does not maintain invoices pertaining to all companies, consultants, and independent contractors paid by Film Columbus. That information can be found in GCAC's IRS 990 forms.

8. GCAC does not maintain expense reports pertaining to all advocacy efforts for the Ohio Motion Picture Tax Credits. That information can be found in GCAC's IRS 990 forms.

{¶24} In *Sell v. Trumbull Cty. Juv. Div.*, 2024-Ohio-6139, ¶ 6 (Ct. of Cl.), this Court recently stated:

Where a public office asserts that all records have been provided, a requester must provide sufficient evidence that the records exist in order to succeed on a public records claim. *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177. If the public office provides affidavit testimony that no records exist, the requester must provide clear and convincing evidence that the records do exist. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 2012-Ohio-4246. However, "some evidence" is sufficient if the office does not provide affidavit testimony negating the existence of additional responsive records. *Sultaana* at ¶ 37-43. Some evidence exists if the requester establishes facts that would usually result in the existence of the additional records or if other records refer to or otherwise suggest the existence of the additional records. *Id.; Mattis v Toledo Police Dept.*, 2023-Ohio-4878 (Ct. of Cl.).

{¶25} Upon independent review, the Court finds that Requester has not provided clear and convincing evidence to rebut Mr. Katenmeyer's averments that no records responsive to Request Nos. 3, 4, 9, and 10 exist. Requester's challenge to the Special Master's recommendations concerning Request Nos. 3, 4, 9, and 10 is not well taken.

**III.    Conclusion**

{¶26} After carefully considering the parties' arguments and relevant law, and after carefully considering the facts and circumstances presented here, the Court OVERRULES Requester's Partial Objections to the Special Master's Report And Recommendation. The Court ADOPTS the Report and Recommendation issued on January 23, 2025.

{¶27} In accordance with the Special Master's recommendations, the Court GRANTS Requester's claim for the production of the records generated from January 1, 2020 through July 15, 2024 that are responsive to parts 1, 6, and 13 of Requester's records request. The Court ORDERS that, within 45 days of the date of this entry, Respondent shall file a written certification that Respondent has produced to Requester the records generated from January 1, 2020 through July 15, 2024 that are responsive to parts 1, 6, and 13 of Requester's records request. The Court further ORDERS that Requester is entitled to recover from Respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that are incurred by Requester, excepting attorney fees. Court costs are assessed against Respondent. All other relief is denied. The Clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

LISA L. SADLER
Judge

**Filed February 18, 2025**
**Sent to S.C. Reporter 3/6/25**